No. 73,822

STATE OF KANSAS, *Appellee*, v. TRAVIS E. KNIGHTEN, *Appellant.*

(917 P.2d 1324)

Opinion filed May 31, 1996.

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Frank E. Kohl*, county attorney, argued the cause, and *Vernon Anderson*, legal intern, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J. This is a direct criminal appeal by Travis E. Knighten from his convictions of second-degree murder and aggravated battery of a law enforcement officer. He contends (1) the evidence was insufficient to support his convictions; (2) evidence of gang affiliation was improperly admitted, (3) he was denied a preliminary hearing, and (4) his motion for change of venue should have been granted. Finding no reversible error, we affirm.

On May 22, 1993, there was a disturbance in the recreation shack at the Lansing Correctional Facility. As a result of this disturbance, one corrections officer, Mark Avery, was killed and another corrections officer, Michael Bidatsch, was severely injured. For his part in the disturbance, the defendant was charged with one count of first-degree murder and one count of aggravated battery against a law enforcement officer.

The defendant was arrested on these charges on August 30, 1993, based on an arrest warrant dated the same date. On November 2, 1993, a grand jury indicted the defendant on both charges. The defendant moved to dismiss the indictment on the grounds that he had already been charged prior to the convening of the grand jury and, therefore, was entitled to a preliminary hearing. The district court denied his motion.

The defendant moved for a change of venue, arguing that pretrial publicity in Leavenworth County was so great that a sufficient number of fair and impartial jurors could not be summoned. After jury selection, the district court found that a fair jury had been impanelled and denied a change of venue.

Michael Bidatsch, one of the victims of the disturbance, testified that he was assigned to the exercise yard at Lansing on the day

Avery was murdered. Because it was raining that day, 200 to 300 inmates were gathered in the recreation shack. Bidatsch was in the shack along with Avery, and a few other officers were in and out of the shack throughout the exercise time.

Bidatsch stated that he first became suspicious of trouble when he noticed a group of Hispanic inmates who usually played at a specific table was not there. Instead, a different group of inmates was playing at the table. Bidatsch testified that he was standing next to the ice machine in the recreation shack when an inmate named Chris Davis hit him in the head with a small weight plate. The plate then bounced off his head and struck a nearby inmate named Reich in the face.

The force of the blow drove Bidatsch to his knees. He reached for his radio but found that it was missing. He then chased Davis into the weight area but lost sight of him in the crowd. As Bidatsch went back into the main part of the recreation shack, he was suddenly attacked by a group of inmates. He fell to the ground and was kicked twice by an inmate named Darrick Harris. Other inmates hit, kicked, and threw pool balls at him as he attempted to crawl out of the shack to safety. Bidatsch testified that he could not identify all of the inmates who attacked him. He was finally able to crawl to safety, but his injuries forced him to spend 3 days in the intensive care unit at the local hospital.

H.R. Woodcock, an investigator at Lansing, stated that he was alerted to the disturbance when he heard an alarm go off. Woodcock testified that when he arrived at the recreation shack, he saw Bidatsch come out of the shack bleeding heavily. Woodcock and other officers entered the shack, where they found Avery lying in a pool of blood. Avery subsequently died from multiple blunt trauma wounds to the head.

Mark Swope, a corrections officer assisting with the investigation, testified that he obtained clothing and shoes from the defendant because the defendant was suspected of taking part in the disturbance. William Hamm, a DNA specialist with the Kansas Bureau of Investigation, testified that some blood spots on the defendant's shoelaces matched Avery's blood. He testified that the

probability of a random match was 1 in 40 million for Caucasians, 1 in 13 million for blacks, and 1 in 15 million for Hispanics.

Delbert Hawel, another investigator, stated that he interviewed the defendant about the incident. According to Hawel, the defendant denied being in the recreation shack at the time of the disturbance and stated that any blood found on his shirt would probably be the result of a tattoo he had earlier received.

Victor King, an inmate at the facility at the time of the disturbance, testified on behalf of the State. King stated that he saw someone hit Avery with a weight plate and at sometime during the disturbance, he saw the defendant standing over Avery with a weight plate in his hand. He did not see anyone chase an inmate into the weight pit area. King admitted that in the initial investigation he had lied to officers to protect himself but stated he now felt safe because he had been paroled to Texas.

Michael Madison, another inmate at Lansing, testified that on the day of the disturbance he was playing poker at the recreation shack. He saw a white inmate named Reich get hit in the head with a weight plate. According to Madison, Avery had gone to help Reich when a group of gang members got mad and began fighting with Avery. Madison testified that during the attack the defendant was restraining Avery's arms and legs and also hitting and kicking Avery. Another inmate, Darrick Harris, was hitting Avery with a weight plate. Madison also saw Bidatsch crawling for the door. Madison testified that he went over to where Avery was lying on the ground and saw a halo around Avery's head. Madison then saw Avery's spirit rise out of his body and recite Revelations 12:7.

Marquis Holmes, also an inmate at Lansing, testified that the disturbance broke out when an inmate named Green threw a weight at Bidatsch. Holmes stated that he also saw the defendant hit Bidatsch and that Bidatsch chased the defendant and Green into the weight pit area. When Bidatsch went into the weight pit area, Avery came under attack from a large group of inmates. Later he saw the defendant involved in hitting Avery.

Byron Wash, another inmate, testified that he saw Bidatsch by Reich, who had been hit by a weight plate. According to Wash, the defendant then hit Bidatsch and ran into the next room, with Bi-

datsch following him. Avery then came in to help Reich, and a group of inmates attacked him. Wash stated that after Bidatsch came back into the room and was attacked, he saw the defendant hitting Bidatsch.

Inmate Joe Campbell testified that prior to the disturbance, he saw the defendant take a 25-pound weight from the weight pit area and set it next to the wall by the restroom. Another inmate, Green, was holding a 10-pound weight in his hands. Campbell stated that when Avery was attacked and fell to the ground, the defendant was holding a weight plate. He also saw the defendant strike Bidatsch in the weight pit area.

Gerald Mayfield, also an inmate, stated that he felt there would be trouble on the day of the incident because there was a lot of tension in the recreation shack. He saw the defendant run into the weight pit area, followed by Bidatsch. He then saw the defendant hit Bidatsch, and there was a large disturbance. Mayfield also testified that the defendant was one of the individuals attacking Avery.

The defendant presented the testimony of Dwayne Garrett, a fellow inmate, who testified that the defendant was outside the recreation shack talking on the telephone when the disturbance happened. On cross-examination, he admitted that although the defendant was on the telephone immediately prior to the disturbance, he did not actually see the defendant on the telephone during the disturbance. Also on cross-examination, the State asked Garrett if he was a member of a gang called the Junior Boys. Garrett stated that he was not.

Inmate Demetrius Jenkins also testified that he was outside the recreation shack with the defendant using the telephone when the disturbance started. He left the defendant on the telephone and went to use the restroom, and then went back outside. On cross-examination, he stated that while the defendant might be a member of the Junior Boys, he himself is not.

Inmate Andre Jackson supported the defendant's claim that he was on the telephone during the entire incident. He testified that immediately prior to the disturbance, the defendant was on the telephone. After the disturbance began, he, Jenkins, Garrett, and the defendant walked away from the recreation shack to the bas-

ketball courts. On cross-examination, he stated that he was not a gang member but that the defendant is a Junior Boy.

Finally, Tiffany Gouldsby testified on behalf of the defendant. She stated that she is a friend of the defendant and that on the day in question he talked to her on the telephone around 3 or 3:30 p.m.

On rebuttal, the State called Roger Bonner, an investigator at Lansing. Bonner stated that part of his job was to maintain files relating to gang activity within the prison. Bonner testified that the defendant, Jenkins, Garrett, and Jackson are all identified as being members of the Junior Boys. According to Bonner, gang members are extremely supportive and protective of each other.

### (1) Sufficiency of Evidence

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Timley*, 255 Kan. 286, Syl. ¶ 13, 875 P.2d 242 (1994).

The defendant argues that there was insufficient evidence for the jury to have found him guilty beyond a reasonable doubt. He contends that Bidatsch did not mention him as one of the attackers and the testimony which points to him is wildly inconsistent and not probative.

Although the defendant argues that there was not sufficient evidence to sustain his conviction, a review of the record shows numerous witnesses who incriminated the defendant as to both crimes charged. As to the murder charge, Victor King testified that he saw the defendant standing over Avery with a weight plate in his hand. Michael Madison testified that the defendant was hitting and kicking Avery, as well as holding him down so that others could hit him. Marquis Holmes also stated that the defendant was one of the persons attacking Avery. Joe Campbell saw the defendant taking a weight from the weight pit area immediately prior to the disturbance and saw the defendant carrying a weight during the disturbance. Gerald Mayfield saw the defendant attacking Avery.

Finally, blood on one of the defendant's shoelaces was consistent with Avery's blood.

As to the charge of aggravated battery of Bidatsch, Marquis Holmes testified that the defendant hit Bidatsch and then ran into the weight pit area. Byron Wash also saw the defendant hit Bidatsch and run into the weight room and saw the defendant strike Bidatsch after he came back into the main room. Joe Campbell testified that he saw the defendant strike Bidatsch when they were in the weight pit area. Finally, Mayfield testified that he saw the defendant strike Bidatsch in the weight pit area.

The defendant argues that because many of the stories given by the inmates testifying are inconsistent with the testimony of Bidatsch in some areas, they are not credible. However, it is well established that this court does not pass on the credibility of witnesses or weigh conflicting evidence, and all questions of credibility are resolved in favor of the State. *State v. Van Winkle*, 254 Kan. 214, 225, 864 P.2d 729 (1993), *cert. denied* 128 L. Ed. 2d 890 (1994). It was for the jury to decide the credibility of the witnesses, the weight to be given the evidence, and the reasonable inferences to be drawn from the evidence. See *State v. Bowen*, 254 Kan. 618, 631, 867 P.2d 1024 (1994). Viewing all of the evidence in a light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

### (2) Gang Membership

The defendant next argues that the district court erred in admitting evidence that he was a member of the Junior Boys gang. He contends that this evidence was not relevant, was highly prejudicial, and should not have been admitted.

The admission of evidence is governed by its relevancy to the issue in question, and the exclusion of evidence is within the discretion of the district court. *State v. Toney*, 253 Kan. 651, 654, 862 P.2d 350 (1993). Under K.S.A. 60-445, the district court has discretion to exclude evidence when its probative value is outweighed by its prejudicial effect. 253 Kan. at 653.

In the case before us, the State, over the objection of the defendant, questioned several of the defendant's witnesses about whether the defendant was a member of the Junior Boys and whether they themselves were. Uniformly, they answered that while the defendant may be a member, they were not. The State then introduced evidence on rebuttal that all of those questioned were indeed members of the Junior Boys and that such gang members would have a tendency to protect each other.

The defendant contends that while evidence of a defendant's gang affiliation is admissible to show motive for an otherwise inexplicable act, it is only admissible when there is sufficient proof that such evidence is related to the crime charged, citing *State v. Tran*, 252 Kan. 494, Syl. ¶ 6, 857 P.2d 680 (1993). He argues that there was no such evidence in this case.

The defendant's argument misses the point, however. The evidence of the defendant's gang membership was not introduced to show motive, but instead to show bias on the part of the defendant's witnesses. As such, it is relevant to show that the defendant and the witnesses testifying on his behalf were all members of the Junior Boys and, therefore, the witnesses had a strong bias. The evidence was relevant, and the only remaining question is whether the district court abused its discretion in finding that the evidence was more probative than prejudicial.

The probative value of evidence of gang membership as it pertains to witness bias is high. In *United States v. Abel*, 469 U.S. 45, 49, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984), the United States Supreme Court held that evidence of gang membership is probative of witness bias, and that "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." 469 U.S. at 52.

Such bias is certainly relevant in this case, where the only witnesses not incriminating the defendant were all members of the defendant's gang. While the defendant argues that this bias could have been established without mentioning gang membership simply by showing that the witnesses were friends of the defendant,

this argument is not persuasive. Simple friendship does not create the same inference of incentive to protect another person that is created by evidence of membership in the same gang.

The question of whether the probative value of the evidence outweighed its prejudicial effect is one addressed to the sound discretion of the trial court. Discretion is abused only when no reasonable person would take the view adopted by the trial court. The defendant has failed to establish an abuse of discretion. This is not a case where there was no actual evidence as to gang affiliation or where gang affiliation had little relevance. See *State v. Cox*, 258 Kan. 557, 565, 908 P.2d 603 (1995); *State v. Vincent*, 258 Kan. 694, 698-99, 908 P.2d 619 (1995) (holding abuse of discretion where there was no evidence of gang affiliation and no evidence that killing was motivated by gang membership). In this case, because there was evidence that both the defendant and his supporting witnesses were members of the same gang, membership was very probative on the issues of witness bias and credibility.

### (3) Denial of Preliminary Hearing

The defendant acknowledges that a probable cause determination was made in his case through indictment by grand jury. However, he contends that once he was arrested and charged prior to the convening of the grand jury, he was entitled to a preliminary hearing under the provisions of K.S.A. 22-2902(1):

"Every person arrested on a warrant charging a felony or served with a summons charging a felony shall have a right to a preliminary examination before a magistrate, unless such warrant has been issued as a result of an indictment by a grand jury."

The purpose of a preliminary examination is to afford the person arrested, as the result of a complaint, an opportunity to challenge the existence of probable cause for further detaining him or her or requiring bail. *State v. Ramsey*, 228 Kan. 127, 131, 612 P.2d 603 (1980). This right is purely statutory and is not required by the Constitution and, therefore, does not implicate due process. See *State v. Sherry*, 233 Kan. 920, 927-28, 667 P.2d 367 (1983).

K.S.A. 22-2902(1) requires that a person who has been arrested and charged with a crime be given the right to a preliminary hear-

ing to challenge the existence of probable cause unless an indictment has already been handed down by a grand jury, in which case, probable cause has already been established. The question presented in this case is whether a grand jury indictment can supersede a preliminary hearing if the grand jury finds probable cause before the defendant has had a preliminary hearing.

Although Kansas has not addressed this question, several federal courts have held that failure to hold a preliminary hearing where there is a subsequent indictment is not grounds for reversal. See *United States v. Miller*, 532 F.2d 1335, 1339 (10th Cir. 1976); *United States v. Mulligan*, 520 F.2d 1327 (6th Cir. 1975); *United States v. English*, 501 F.2d 1254 (7th Cir. 1974); *United States v. Brumley*, 466 F.2d 911 (10th Cir. 1972). The court in *Miller* stated the reason for this holding is that "once an indictment has been handed down the purpose of a preliminary hearing—to determine whether there is probable cause for the accused's detention, [citations omitted]—has been fulfilled." 532 F.2d at 1339.

The same may be said in this case. The reason for a preliminary hearing is so that a determination can be made as to probable cause. *State v. Ramsey*, 228 Kan. at 131. Once a grand jury has handed down an indictment, a determination of probable cause has been made and a preliminary hearing is no longer necessary.

The language used in K.S.A. 22-2902(1) also compels this conclusion. It provides that a preliminary hearing is necessary unless the arrest is the product of a grand jury indictment. The statute provides for some means of a test of probable cause but recognizes that once a grand jury indictment has been handed down, such a test has occurred. It matters little whether the grand jury indictment is handed down before or after the defendant is charged with the crime. In either case, a determination of probable cause has been made. The fact that the indictment came after, not before, the arrest and charge is not grounds for reversal.

### (4) Change of Venue

K.S.A. 22-2616(1) provides:

"In any prosecution, the court upon motion of the defendant shall order that the case be transferred . . . if the court is satisfied that there exists in the county

where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

The determination of whether to change venue lies within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of prejudice to the substantial rights of the defendant. The burden is on the defendant to show that such prejudice exists in the community that it was reasonably certain he or she could not have obtained a fair trial. *State v. Anthony*, 257 Kan. 1003, 1013, 898 P.2d 1109 (1995).

A review of the record in this case indicates that 69 potential jurors were questioned on voir dire. Many of them had read something about the case or heard about it on television, but in most cases any prior information was slight. The defendant's argument centers around the fact that many jurors had friends or relatives working at the prison. Out of the 69 potential jurors, 29 indicated that they had friends, acquaintances, or relatives at the prison, although in many instances the acquaintances were not well known. Of those 29 jurors indicating that they knew someone working at the prison, 12 were dismissed for cause.

The record also reveals that the district court was very generous in allowing strikes for cause. In all, 27 potential jurors were dismissed for cause. At no time did the judge refuse to dismiss any potential juror where the defendant's attorney had requested dismissal. Of the 12 jurors seated, only four had friends or acquaintances working at the prison. This is not a case where the judge attempted to press jurors into service or where the defendant's objections to jurors were overruled. Defense counsel passed all of the panel for cause. The defendant failed to meet his burden to show that such prejudice exists in the community that it was reasonably certain he could not have obtained a fair trial. The district court properly denied his motion for change of venue.

Affirmed.