No. 76,580

STATE OF KANSAS, *Appellee*, v. MICHAEL E. MIMS, *Appellant*.

(956 P.2d 1337)

Opinion filed April 17, 1998.

*Mary D. Prewitt*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellee. ·

*Matthew J. Bock*, assistant district attorney, argued the cause, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

The opinion of the court was delivered by

LARSON, J.: This is Michael E. Mims' direct appeal of his jury convictions of felony murder, K.S.A. 21-3401, aggravated robbery, K.S.A. 21-3427, conspiracy to commit aggravated robbery, K.S.A. 21-3302; 21-3427, and aggravated assault, K.S.A. 21-3410, arising out of Mims' participation in a robbery of a motel in Kansas City, Kansas, where the desk clerk, Eric Garhart, was shot and killed by Brett Nave.

The convictions arise out of two trials. In the first, Mims was convicted of the conspiracy and aggravated assault charges, but the jury was unable to reach a verdict on the remaining two charges. In a second trial, Mims was convicted of felony murder and aggravated robbery. Mims appeals his convictions and consecutive sentences of life imprisonment plus 190 months.

The seven issues Mims raises require an understanding of the crime spree resulting in the robbery and the loss of Garhart's life.

In the early evening of March 15, 1994, 19-year-old Mims and his friend, Darnell Porter, picked up two of Darnell's cousins, Kenny and Kevin Porter. Mims wanted to steal a car, and Kevin knew how to break the steering column and hot wire a car. Kenny and Kevin testified they planned to steal a stereo for the car they were riding in which belonged to another cousin, who worked at the Best Western Motel in Kansas City, Kansas.

After obtaining a screwdriver, the group drove to a Missouri parking lot where Kevin broke into and started a Pontiac Bonneville, which Mims drove away. The group then returned to Kansas and picked up Nave, who brought a 12-gauge shotgun and a bag with a mask and a stocking cap inside.

After leaving Nave's home, the young men drove to an apartment complex in the Argentine district. Mims, with the shotgun, and Darnell, with his 9 mm Glock pistol, left in the stolen car to

rob a nearby Sonic Drive-in. The anticipated robbery was unsuccessful as the restaurant was closed.

Darnell, Kevin, and Nave testified that Mims then wanted to rob the Best Western Motel. Mims stated the idea was Darnell's. The two cars pulled into a gas station a block down Southwest Boulevard from the motel. Darnell refused to get into the stolen car with Mims. Nave said he wanted to go, but Mims replied he did not want any "busters" (persons who would not do anything) with him. Nave replied he was in for the "187" (a murder).

Mims and Nave drove to the Best Western Motel in the stolen car, carrying the weapons and wearing the stocking cap and the mask. The doors to the motel were locked, and no one answered their knock, so they returned to the others. Darnell then told them they just needed to knock harder and someone would come open the door.

Mims and Nave went back to the motel. At this point the testimony varied as to what exactly happened. However, there is no question that money was taken and the desk clerk was shot and killed by Nave.

There was testimony that the door was opened by the security guard, Jeff Harrison. Mims entered, holding the shotgun, and went past Harrison and ran behind the front desk. Nave pointed the pistol at Harrison and ordered him to the floor. Mims engaged in a struggle with Garhart, who took the shotgun away from Mims and struck him with it, gashing his head.

After his confrontation with Garhart, Mims ran out of the motel. Nave then asked Mims where the shotgun was. Nave testified Mims said they should leave, but then he saw Garhart coming at him with the shotgun so he fired two or three times into the motel. Harrison testified that Nave fired all over the place. Harrison stated that Mims later grabbed him, took him behind the counter where Garhart was lying dead, and told him to open the safe. Nave also testified to this sequence of events.

Harrison said he then heard a voice from outside telling Mims and Nave to leave, and they did so. Nave stated they left after opening the cash drawers and retrieving the shotgun.

Mims, however, testified that his struggle with Garhart occurred after Harrison had already been brought behind the desk and that after the struggle, he left the motel and returned to the car. Mims said he was trying to pull out of the parking lot when Nave went back to get the shotgun and killed Garhart. Mims said he never reentered the motel.

The Porters left the gas station upon hearing gunfire from the motel, then followed the fleeing stolen car to Nave's home. Nave ran off with the shotgun, and the Porters followed Mims to where he abandoned the stolen car. Mims returned the pistol to Darnell.

Nave testified that the next day, Mims stated he had acquired about $150 in the robbery and offered Nave $50, which Nave claimed to have refused. Kevin testified he saw Mims counting money at their friend's house after the robbery. Mims testified he did not take any money from the motel. Approximately $134.50 was missing from the cash drawers at the motel.

Mims' fingerprints were discovered at the crime scene, and eventually all the participants were charged. Most of the young men entered into plea agreements, and between Mims' first and second trial, Nave pled guilty to first-degree felony murder and aggravated robbery, then testified at the second trial.

Our jurisdiction is pursuant to K.S.A. 22-3601(b)(1).

*Admission of other crimes evidence*

Mims complains the trial court erred in allowing evidence to be admitted of the car theft, the attempted robbery of the Sonic Drive-In, and the two charges which he had been convicted of at the first trial. The court did instruct the jury that evidence tending to prove a crime other than the present crimes charged should be considered solely for the purpose of proving the defendant's motive, opportunity, intent, preparation, plan, and knowledge.

Admission of evidence falls within the trial court's discretion, which is abused only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view. *State v. Haddock,* 257 Kan. 964, 978, 897 P.2d 152 (1995).

Mims contends the admission of evidence of other crimes or civil wrongs is governed by K.S.A. 60-455, which states such evidence is inadmissible unless relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Mims argues that the trial court must find the evidence is relevant to prove a material fact substantially in issue and that its probative value must outweigh its prejudicial effect, citing *State v. Faulkner,* 220 Kan. 153, 551 P.2d 1247 (1976).

We have recognized that K.S.A. 60-455 was intended to prohibit usage of a previous crime in another trial to imply the disposition to commit the crime currently being charged. *In re Care & Treatment of Hay* 263 Kan. 822, 836-38, 953 P.2d 666 (1998). However, it has long been held that evidence of other crimes may be admissible independent of 60-455 when such evidence is that of the acts done or declarations made before, during, or after the happening of the principal occurrence where those acts are so closely connected to the principal occurrence as to become in reality part of it. Admission of such evidence is governed by the rules of evidence set out in Article 4, chapter 60, of the Kansas Statutes Annotated. See *State v. Clark,* 261 Kan. 460, 470-71, 931 P.2d 664 (1997).

In the present case, none of the evidence complained of was introduced for the purpose of proving Mims' disposition to commit the crimes charged, but was clearly used to establish the events of the night in which the charged crimes occurred. The evidence was also used to corroborate the testimony of witnesses at the trial and to establish the relationship and participation of the parties. See *State v. Jones,* 247 Kan. 537, 547, 802 P.2d 533 (1990).

This evidence was part and parcel of the crimes charged and was necessarily admitted in order to present the jury with the facts surrounding the crimes which were alleged to have been committed. The evidence indicated both a plan to commit the robbery, as well as the factual basis for its preparation. The trial court clearly did not abuse its discretion in admitting this evidence. This contention is without merit.

### Right to inform jury of convictions from first trial

Mims argues that the trial court deprived him of his constitutional right to present a defense by not allowing him to inform the jury that he had already been convicted of conspiracy and aggravated assault. In prohibiting Mims from referring to his previous convictions, the trial court stated: "[T]he only reason to bring that up is to show that he was convicted of these two in the last trial and a jury acquitted him on the other two charges, that means he's innocent of these two charges, the one will follow the other." The court saw no relevance to such evidence.

The exclusion of evidence is within the trial court's discretion. *Haddock*, 257 Kan. at 978. In order to be admissible, evidence must be relevant. See K.S.A. 60-407(f). Relevant evidence means "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b).

Mims claims that because his theory of defense was that he had abandoned the robbery prior to the shooting of Garhart, it was important for the jury to know he had already been held responsible for the only crimes which the evidence substantiated.

We do not agree. Mims has cited no material fact that the evidence of his earlier conviction would have tended to prove. In fact, even though the first jury had failed to agree on a verdict, the court expected Mims would attempt to utilize the result of his previous trial to indicate he should not be found guilty in the second trial, regardless of the evidence. Such a use is clearly not relevant, and the trial court did not abuse its discretion in refusing this testimony.

Mims was entitled to and did present actual relevant evidence pertaining to his theory of defense that he had abandoned the robbery. Mims testified that he left the motel after Garhart took the shotgun and did not go back inside. He also told the jury that he tried to drive away before the shots were fired and that he did nothing to cause Garhart's death. Mims was not unconstitutionally deprived of a fair trial, and this assertion of error fails.

### Admission of gang affiliation evidence

Mims claims it was reversible error for the trial court to refuse to allow him to introduce evidence that the three Porters were all

members of the same street gang and that he was not a member of any gang. He contends this evidence would show bias or a motive to present certain testimony. Noting that the familial relationship · was adequately established, the trial court held that nothing involving gang membership was relevant to the acts Mims was accused of and denied his motion.

The admission of evidence is governed by its relevancy, and the exclusion of evidence lies within the trial court's discretion. *State v. Knighten*, 260 Kan. 47, 53, 917 P.2d 1324 (1996).

We did hold that the probative value of gang membership evidence as it pertains to bias is high under certain circumstances in *State v. Knighten*, 260 Kan. at 53-55. However, we have also recognized that its admission in other circumstances may not be justified. 260 Kan. at 55.

In this case, the trial court correctly pointed out that the familial relationship running between these same witnesses might present indications of bias, a situation contrary to *State v. Roberts*, 261 Kan. 320, 931 P.2d 683 (1997), where a familial bias weighed against a gang bias. The three Porters' possible involvement in gang activity was not very relevant to impeach their credibility as in other cases where we have upheld admission of such evidence. Furthermore, this evidence would likely have had little effect at trial. None of the Porters were actually at the scene of the crime where the events occurred which were critical to Mims' defense. Their testimony by and large coincided with Nave's and even Mims'. In addition, different aspects of the testimony of each of the Porters which may have been slightly harmful to Mims' defense, such as Kevin's testimony that he saw Mims counting money after the robbery, was uncorroborated or denied by one or more of the other Porters. This point has no merit.

*Abandonment instruction*

Mims asserts the trial court erred in refusing to give the jury the following proposed instruction:

"If you find that Michael Mims had abandoned the robbery prior to the killing of Eric Garhart by Bret[t] Nave and that Bret[t] Nave returned to the motel office

for the sole reason to retrieve his father's shotgun and in doing so killed Eric Garhart you should find Michael Mims not guilty of murder."

The jury in the present case was instructed that felony murder is the killing of a human being committed in the commission of, attempt to commit, or flight from, an inherently dangerous felony.

When reviewing challenges to jury instructions, we are required to consider all the instructions together, read as a whole, and not to isolate any one instruction. If the instructions properly and fairly state the law as applied to the facts of the case and a jury could not reasonably have been misled by them, the instructions do not constitute reversible error even if they are in some way erroneous. *State v. Aikins,* 261 Kan. 346, Syl. ¶ 25, 932 P.2d 408 (1997).

In a criminal case, the court must instruct the jury on the law applicable to the defendant's theories for which there is supporting evidence. An appellate court must view the evidence in the light most favorable to the party requesting the instruction when considering the trial court's refusal to give a specific instruction. *State v. Scott,* 250 Kan. 350, Syl. ¶ 4, 827 P.2d 733 (1992).

In *State v. Hearron,* 228 Kan. 693, 619 P.2d 1157 (1980), we determined whether the evidence was sufficient to convict on felony murder when the defendant alleged the burglary had been completed at the time of the shooting. We declared:

"Time, distance, and the causal relationship between the underlying felony and the killing are factors to be considered in determining whether the killing is a part of the felony and, therefore, subject to the felony-murder rule. Whether the underlying felony had been abandoned or completed prior to the killing so as to remove it from the ambit of the felony-murder rule is ordinarily a question of fact for the jury to decide." 228 Kan. at 696.

In this case, it was clear the killing occurred during the commission of the underlying felony, as the evidence conclusively showed Garhart died during the robbery and it was not necessary to instruct the jury as to whether the felony had been completed or abandoned. See *State v. Rider, Edens & Lemons,* 229 Kan. 394, 625 P.2d 425 (1981).

Mims' reliance upon *State v. Chism,* 243 Kan. 484, 759 P.2d 105 (1988), for support of the proposition that the evidence in his case was not conclusive that the killing occurred during the crime is not

persuasive. Even accepting his assertions that he personally had abandoned the felony prior to the shooting of Garhart, the evidence overwhelmingly shows the shooting occurred at the exact time of his involvement with the crime and at the same location of the robbery. The evidence indicates the killing resulted from an attempt to recover the shotgun used in the robbery, which could have linked Mims and Nave to the crime. Further, Mims drove the getaway vehicle after the robbery and shooting. Under these facts, it would be impossible to conclude the shooting did not occur as a part of the underlying robbery. The instructions as a whole properly instructed the jury regarding the law as applied to the facts of this case. The trial court did not err in refusing to give the requested instruction.

*Repetition of vicarious liability instruction*

Mims complains that he was prejudiced when the following instruction from PIK Crim. 3d 54.05 and 54.06 was read three times to the jury during the course of his trial:

"A person who either before or during its commission intentionally aids, abets, advises, counsels, or procures another to commit a crime with the intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation if any in the actual commission of the crimes. A person who intentionally aids, abets, advises, counsels or procures another to commit a crime is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime if the other crime was reasonably foreseeable."

The court first read this instruction during voir dire when a member of the panel expressed confusion regarding the law of vicarious liability for the acts of another. The court read the instruction again after jury selection, prior to opening arguments, and remarked: "Obviously I don't mean to single this one out in particular and give it more importance than the rest. . . . The reason we spent a little more time on this is because it's sometimes a confusing concept for people who aren't involved in law enforcement to understand." The instruction was also given with the other instructions prior to the submission of the case to the jury.

We are required to consider jury instructions as a whole without isolating any one instruction. *State v. Moncla,* 262 Kan. 58, Syl. ¶ 4, 936 P.2d 727 (1997). We have held that it is clearly erroneous for a judge to give an instruction that singles out particular evidence and emphasizes the weight to be given that evidence by the jury. *State v. Cathey,* 241 Kan. 715, 731, 741 P.2d 738 (1987).

In the present case, Mims does not assert that this instruction was erroneous or misleading, but merely claims that the instruction was unduly emphasized by its repetition. Mims cannot assert that this instruction improperly stated the law or directly singled out or emphasized any of the evidence. Rather, he complains the law itself was improperly emphasized.

Mims' complaint has no merit. The judge has a duty to ensure that the jury properly understands the law to be applied in a case. The instruction was properly included in the instructions submitted to the jury at the close of the case. It is also proper to instruct potential jurors as to the law in order to perform proper voir dire and discover if the jurors are capable of applying the law in the case. Finally, if an instruction in and of itself is not erroneous or misleading, there should be no substantial prejudice in reading the instruction one additional time after the jury has been selected. This point fails.

*Double jeopardy*

Mims believes his convictions and consecutive sentences for both the felony murder of Garhart and the underlying felony of aggravated robbery violates the Double Jeopardy Clause of the United States and Kansas Constitutions, as well as K.S.A. 21-3107(2)(d), precluding punishment for a crime necessarily proved if the crime charged were proved.

A question of whether double jeopardy applies is a question of law over which we have unlimited review. See *State v. Mertz,* 258 Kan. 745, Syl. ¶ 1, 907 P.2d 847 (1995).

We have recently considered this same objection in *State v. Sims,* 262 Kan. 165, Syl. ¶ 5, 936 P.2d 779 (1997), where we held: "When the underlying felony supports a felony-murder charge, it is well-established law in Kansas that multiple convictions and pun-

ishments for both felony murder and the underlying felony do not violate double jeopardy."

When the same act or transaction violates two distinctly different statutory provisions, we must consider when deciding if two crimes have been committed whether each statute requires proof of an element which the other crime does not. "Where one statute requires proof of an additional or different element, the crimes are not the same, even though the proof of the crimes may substantially overlap." *Sims*, 262 Kan. at 173. See *State v. Dunn*, 243 Kan. 414, 432-33, 758 P.2d 718 (1988).

Mims' convictions and consecutive sentences for both felony murder and aggravated robbery involved different elements and, therefore, do not violate principles of double jeopardy or Kansas law.

*Multiplicity*

Mims argues that his convictions for aggravated robbery and felony murder merge with his conviction for conspiracy and should be set aside because all three offenses derived from the same overt acts. He cites K.S.A. 21-3107(2)(d) as interpreted by *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), to support his argument that only the conspiracy count should remain.

This argument has no merit under Kansas law. The Kansas Legislature clearly provided in K.S.A. 21-3436 that the crimes of felony murder and aggravated robbery shall not merge. Further, we have held: "The commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The legislature is empowered to separate the two and to affix to each a different penalty." *State v. Tyler*, 251 Kan. 616, Syl. ¶ 12, 840 P.2d 413 (1992). This issue also fails.

Affirmed.