No. 92,478

STATE OF KANSAS, *Appellee*, v. HARVEY L. ROSS, *Appellant.*

(127 P.3d 249)

Opinion filed February 3, 2006.

*Sarah Ellen Johnson*, assistant appellate defender, argued the cause and was on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Debra S. Peterson*, deputy district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Harvey Ross appeals his convictions for one count of first-degree murder and one count of attempted first-degree murder, asserting that: (1) The trial court erroneously admitted evidence that Ross fled the state; (2) the trial court erroneously admitted evidence of Ross' gang affiliation; (3) cumulative errors denied him a fair trial; and (4) the sentencing judge erroneously included Ross' criminal history without proving it to a jury beyond a reasonable doubt.

## FACTS

During the early morning hours of April 14, 2002, Timothy Cooper and his brother Kenneth Porter were shot at the Paradise Club in Wichita, Kansas. Porter, who suffered three gunshot wounds to his back and abdomen, survived even though his wounds were life threatening. Cooper also suffered three gunshot wounds, two in his chest and one in his wrist. Unfortunately, Cooper died from his injuries.

Detective James Espinoza arrived at the scene shortly after the shooting. Marcus Lowery, who had witnessed the shooting, described the shooter to Espinoza. Lowery stated that the shooter was a black male approximately 6 feet tall with a short or medium Afro and slight facial hair, wearing a light-blue shirt. Lowery recognized the shooter as someone he had seen around town but did not know his name. The next day, police showed Lowery a photographic lineup, and Lowery identified Ross as the shooter.

Will O'Neal was working as a security guard at the Paradise Club. O'Neal was outside the building in the neighboring parking lot when the shooting occurred. After hearing the shots, O'Neal rushed to get inside the building. As O'Neal entered the door, he saw a black male about 6 feet tall and dressed in a blue shirt run out of the building. The day after the shooting, O'Neal picked Ross' picture and another person's picture out of a photographic lineup, stating "[t]hese are [the] two that appeared to have come out of the Paradise."

On April 14, police issued an order to arrest and detain Ross. Officers immediately began searching for Ross at his last known addresses. Several days later, the district court issued a warrant for Ross' arrest. Ross was arrested on July 10, 2003, in Federal Way, Washington.

On April 11, 2002, 3 days before the shooting, Ross reported to work at his permanent job with Berry Tractor. Ross left work early that day for a probation hearing to discuss the court's concerns about Ross' job situation. Even though Ross' previous probationary period was nearly over, at the conclusion of the hearing the district court extended Ross' probation period for an additional 18 months.

On April 12, 2002, Ross did not report for work as scheduled or call his employer. Ross also was scheduled to work the following week. Ross failed to show up again. Ross did not contact his employer or pick up his paycheck for $472.97. Ross did not appear for an appointment with his probation officer on Monday, April 15, 2002, and failed to contact his probation officer as required.

After his arrest in July 2003, Ross was returned to Kansas and charged with first-degree premeditated murder, criminal possession of a firearm, and attempted first-degree murder, or, in the alternative, aggravated battery. At trial, to contradict Lowery's eyewitness identification, Ross presented several witnesses, including Wichita police officers and an eyewitness. The eyewitness was Ross' first cousin, David Robinson, who testified that he was with Ross at the Paradise Club and Ross was not the shooter.

Before Robinson testified, the State requested a brief hearing outside the presence of the jury regarding the admission of evidence that Robinson and Ross were affiliated with the same gang. Over Ross' objection the trial court ruled that the evidence of gang membership would be admissible to show Robinson's bias. During his cross-examination, Robinson denied that he and Ross were affiliated with the Tru Boys gang but later admitted that he had "TRU" tattooed on his right shoulder.

The State then called a Wichita police officer, who testified that Robinson had previously admitted to being a Tru Boys gang member, and another officer, who testified that Ross and Robinson were both documented as active members of the Tru Boys gang.

The jury found Ross guilty of the first-degree premeditated murder of Cooper, criminal possession of a firearm, and the attempted first-degree murder of Porter. The district court sentenced Ross to life in prison (hard 25) for the first-degree murder conviction, a 586-month sentence for the attempted murder conviction, and a 9-month sentence for the criminal possession of a firearm conviction. The court ordered the 9-month sentence to run consecutive to Ross' life sentence. Ross appeals his convictions and sentences pursuant to K.S.A. 22-3601(b)(1).

I. Evidence of flight

Ross first asserts that the trial court improperly admitted evidence that he fled to the state of Washington after the murder. Ross filed a motion in limine requesting the district court to exclude the evidence of flight. The district court overruled the motion. The defendant must object to the admission of the evidence at trial to preserve the issue for appeal when the defendant's motion in limine to suppress evidence is denied. K.S.A. 60-404; *State v. Branning*, 271 Kan. 877, 880, 26 P.3d 673 (2001). The State argues that Ross failed to preserve this issue for appeal when he failed to object to the admission of the evidence at trial.

Contrary to the State's contention, Ross' counsel had objected to flight evidence from four witnesses prior to their testimony, stating, "[W]e would object to their testimony, because we are objecting to flight being introduced in this case. . . . And if the State has no objection for this objection standing for those four witnesses." The court accepted Ross' objection as a standing objection to all four witnesses and overruled the objection. We have previously noted that a standing objection offered prior to the witness' testimony is sufficient to preserve an issue for appeal. *State v. Haddock*, 257 Kan. 964, 984-85, 897 P.2d 152 (1995).

When the admission or exclusion of evidence is raised at trial, an appellate court first considers whether the evidence is relevant. *State v. Carter*, 278 Kan. 74, 77, 91 P.3d 1162 (2004). Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). "Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question." *Carter*, 278 Kan. at 77.

Evidence of a defendant's flight or attempted flight is relevant to show the defendant's consciousness of guilt. *State v. Walker*, 226 Kan. 20, 21, 595 P.2d 1098 (1979). The statutory rules of evidence do not specifically address the admission of evidence regarding the defendant's flight or attempted flight. See K.S.A. 60-401 *et seq.* Thus, K.S.A. 60-445 is the applicable statute which allows the trial court to exclude evidence if its probative value is substantially outweighed by its prejudicial effect.

We, therefore, conclude that the trial court has discretion to admit evidence of flight. The trial court's decision to admit this evidence is reviewed by an appellate court using an abuse of discretion standard. Judicial discretion is abused when the court's action is arbitrary, fanciful, or unreasonable. However, if reasonable persons could differ as to the propriety of the trial court's decision, there is no abuse of discretion. *State v. Jamison*, 269 Kan. 564, 568, 7 P.3d 1204 (2000).

Ross argues that even though flight evidence may be relevant, this court should adopt a restrictive rule for its admission. Ross requests that, prior to admitting the evidence of flight, this court requires the State to prove that the defendant had specific knowledge that he or she was being sought for the crime charged. For support, Ross relies on *United States v. White*, 488 F.2d 660 (8th Cir. 1973), and *United States v. Jackson*, 572 F.2d 636 (7th Cir. 1978).

In *White*, the Eighth Circuit Court of Appeals considered the propriety of an instruction that allowed the jury to infer the defendant's guilt based on evidence that the defendant ran from federal agents at the time of his arrest more than 5 months after the crime at issue occurred. 488 F.2d at 662. The *White* court concluded that the trial court's instruction was erroneous because there was no evidence that the defendant knew at the time of his alleged flight that he was being sought for the crime charged. However, we note the *White* court held the admission of that evidence was harmless and upheld the defendant's conviction. 488 F.2d at 662.

In *Jackson*, the Seventh Circuit Court of Appeals reversed a defendant's conviction because of the erroneous admission of flight evidence. 572 F.2d at 643. Jackson had attempted to run from federal agents for about 3½ months after the crime charged. 572 F.2d at 638-40. The *Jackson* court reasoned that the inference of guilt was weak because there was no evidence that supported Jackson's consciousness of guilt for the specific crime charged. Nevertheless, the *Jackson* court refused to establish the requirement that evidence of flight is admissible only when the defendant knows that he or she is being sought for the crime charged, stating that

"as the interval between the crime charged and the flight expands, evidence of the defendant's knowledge that he is being sought for the crime becomes an increasingly important factor in the propriety of drawing the inference from consciousness of guilt to consciousness of guilt concerning the crime charged." 572 F.2d at 640.

In *State v. Walker*, 226 Kan. at 20, this court addressed the issue of whether to restrict evidence of flight unless the defendant has knowledge that he or she is being sought for the crime charged. Walker sought reversal of his conviction because at trial the State had introduced evidence that he fled from the police officers who went to a house to question Walker about an aggravated robbery. A woman present at the house told police that Walker was not home. Walker later called the police and made an appointment to meet with an officer, but failed to show up. A few days later, the officer returned to Walker's home and was again advised that Walker was not home. The officer was suspicious, so he watched the residence. Walker emerged about 20 minutes later, entered a car, and departed. The officer followed. When Walker became aware that the officer was following him, he jumped from the car and ran. Walker continued to elude police for about 3 more months. 226 Kan. at 20-21.

The *Walker* court analyzed the federal courts' decisions in *White* and *Jackson* and other cases and concluded that it was not advisable to adopt the restrictive rule of *White*, stating:

"Actual knowledge by a defendant that he is being sought for the crime in question is not a prerequisite to the admission of evidence of flight as tending to show consciousness of guilt but merely goes to the weight to be given such evidence. This is especially true when the flight occurs within a reasonable time of the crime. Possibly such a precautionary prerequisite might be justified in situations where the flight occurs months later. However, we deem it the better reasoned authority to admit flight evidence for consideration by the court or jury with such factors as time lapse and accusation knowledge going to the weight to be given the evidence." 226 Kan. at 25.

Ross argues that the facts in this case present the situation justifying the adoption of knowledge as a prerequisite as alluded to by the *Walker* court because here there is no evidence that he ever fled from the presence of police. Ross summarizes that the evi-

dence simply shows that he moved to the state of Washington between April 2002 and July 2003. However, Ross' factual summary overlooks some key evidence.

Ross left his job early on Thursday, April 11, 2002, to attend a probation hearing and failed to report to his job as scheduled on Friday, April 12. Ross never returned to his job or contacted his employer and failed to pick up his paycheck for $472.97. In addition, Ross had an appointment with his probation officer on Monday, April 15, 2002. Ross did not appear for the appointment. Ross' last contact with his probation officer was at the hearing on April 11.

On April 14, the day of the murder, at about 9 p.m., police issued an order for law enforcement officers to arrest and detain Ross and began an immediate and active search for Ross that included checking all of Ross' last known addresses. Several days later, the district court issued a warrant for Ross' arrest for the homicide of Timothy Cooper. Officers could not locate Ross until he was arrested on July 10, 2003, in Federal Way, Washington.

The evidence in this case does not present the same type of flight at issue in *Walker, White,* or *Jackson.* We note there is nothing in the factual circumstances of this case that requires our court to overrule *Walker* and adopt a knowledge prerequisite for the admission of flight evidence. Here, the evidence clearly supports an inference that Ross was aware that police were looking for him in connection with Timothy Cooper's murder. Ross' cousin David Robinson, who testified that he was present during the shooting and that Ross did not shoot Cooper, admitted under cross-examination that he had seen Ross' photograph identified on television 3 or 4 days after the shooting as the person police sought for Cooper's murder.

At trial, Ross testified that he moved to Washington because of his probation issues. The State argued that Ross vanished after the shooting because he knew someone would identify him. These competing arguments presented a factual issue for the jury to decide. This is exactly the scenario the *Walker* court anticipated when concluding that the better approach was to admit flight evidence for the jury to consider, while factors such as time lapse and the

defendant's knowledge going to the weight to be given the flight evidence. *Walker*, 226 Kan. at 25.

Kansas case law specifically allows the admission of evidence of the defendant's flight without restriction. See *Walker*, 226 Kan. at 25. Ross fails to cite any new authority since *White* and *Jackson*, which were previously rejected by this court in *Walker*, to support overruling *Walker*. Therefore, the trial court did not err when it admitted evidence of Ross' flight.

## II. Evidence of gang affiliation

Next, Ross claims that the trial court erroneously admitted evidence that he was a member of a gang. Ross' first cousin, David Robinson, testified that he was with Ross at the Paradise Club on the night of the shooting and Ross was not the shooter. On cross-examination, the State asked Robinson whether he and Ross were members of the same organizations or clubs. When Robinson responded that they were not, the State asked specifically whether Robinson and Ross were both members of the Tru Boys street gang. Robinson again answered no.

To rebut Robinson's answer, the State established that Robinson had "TRU" tattooed on his right shoulder. The State also presented rebuttal evidence from Wichita police officers who testified that Ross and Robinson were active members of the Tru Boys gang. In closing argument, the State attacked Robinson's credibility by pointing out the discrepancy between his denial of membership in the Tru Boys gang and the presence of "TRU" tattooed on his shoulder. The State did not mention Ross' membership in the gang or highlight Robinson's potential bias arising because he and Ross were both gang members.

Evidence of gang membership is admissible if relevant. *Jamison*, 269 Kan. at 568. The first question for the admission of this evidence is relevance. If an appellate court concludes that the evidence is relevant, it applies the rules of evidence and reviews the trial court's decision either as a matter of law or as the exercise of the district judge's discretion, depending on the requirements of the rule in question. *Carter*, 278 Kan. at 77.

Evidence of gang affiliation is admissible to establish a motive for an otherwise inexplicable act or to show witness bias. *State v. Lowe*, 276 Kan. 957, 961, 80 P.3d 1156 (2003) (approving admission to show motive for otherwise inexplicable crime); *State v. Roberts*, 261 Kan. 320, 324-25, 931 P.2d 683 (1997) (approving admission to show witness bias and credibility). " '[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.' " *State v. Knighten*, 260 Kan. 47, 54, 917 P.2d 1324 (1996) (quoting *United States v. Abel*, 469 U.S. 45, 52, 83 L. Ed. 2d 450, 105 S. Ct. 465 [1984]), and holding that evidence of gang membership created a stronger inference of bias than mere friendship).

K.S.A. 60-455 does not apply because evidence of gang membership is not evidence of a crime or civil wrong. *Lowe*, 276 Kan. at 963. The statute that addresses the admission of gang evidence is K.S.A. 60-445, which allows the trial court discretion to determine whether the evidence is more probative than prejudicial. The trial court's decision is reviewed using an abuse of discretion standard. *Lowe*, 276 Kan. at 961.

Ross argues that the gang evidence was not relevant, was highly prejudicial, and was unnecessary to establish bias. Ross argues the State established the possibility of bias by informing the jury of Robinson's and Ross' familial relationship as first cousins. This argument limits litigants to one form of impeachment. The rules of evidence do not require such limitation. Furthermore, this court has concluded that the issue of whether a particular bias is more weighty than another for impeachment purposes goes to the weight of the evidence, not its admissibility. *Roberts*, 261 Kan. at 324 (discussing a familial versus gang relationship). The weight of the evidence is within the jury's purview and not for this court to review. *Roberts*, 261 Kan. at 324. Accordingly, Ross' argument regarding the relevance of the gang evidence has no merit.

Ross further argues that the State did not use the gang evidence to establish bias because no argument regarding Robinson's bias was included in the State's closing argument. This argument also

lacks merit. We note that there is no rule requiring the State to address all or any potential impeachment evidence it had previously introduced in its closing argument.

Finally, Ross argues that the evidence was not properly admitted for proving bias because the State did not introduce evidence that gang members protect each other. Although the State presented such evidence in *Knighten*, the *Knighten* court did not establish a prerequisite requiring evidence of gang members' propensity to lie for each other before the admission of gang membership to show bias. See 260 Kan. at 54. In *State v. Mathenia*, 262 Kan. 890, 901-02, 942 P.2d 624 (1997,) this court approved the use of gang evidence for establishing witness bias without addressing whether the State specifically admitted evidence that gang members will lie for each other.

The State argues that evidence of Ross' and Robinson's mutual gang membership was relevant to establish Robinson's bias as a witness and attack Robinson's credibility. The State then argues that any prejudice to the defendant was overcome by the following instruction to the jury:

"Evidence has been introduced that a witness is a member of a gang.

"Such evidence, if believed, was not received and may not be considered by you to prove that any person is of bad character or that he has a disposition to commit crimes.

"Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show the existence of bias or interest of any witness.

"You must weigh it in the same manner as you do all other evidence in the case.

"You are not permitted to consider such evidence for any other purpose, and [it] may not be considered in any manner against the defendant, Harvey Ross."

Robinson was a key witness for Ross' defense. He was the only person at the shooting who testified that Ross was definitely not the shooter. Thus, his credibility and bias for Ross were significant for the jury to consider in determining the weight to be given Robinson's testimony. Although the evidence that Ross and Robinson were gang members was also prejudicial to Ross, it was highly probative for evaluating the credibility of Robinson's testimony. The jury was made aware of Robinson's possible bias for Ross and his

inconsistent statements about not being a gang member while having the gang's name tattooed on his arm. Any prejudicial effect was cured by the judge's instruction to the jury, which limited its consideration of the gang evidence.

This court reviews the admission of gang evidence using a deferential, abuse of discretion standard. *Lowe*, 276 Kan. at 961. Ross has the burden of establishing that the trial court abused its discretion. See *State v. Martis*, 277 Kan. 267, 280, 83 P.3d 1216 (2004). Judicial discretion is abused when no reasonable person would adopt the trial court's view. *Lowe*, 276 Kan. at 961. Here the facts do not support Ross' claim that the trial court abused its discretion. Thus, the trial court did not err when it admitted evidence of Ross' affiliation with a gang.

III. Cumulative errors

Ross argues that he did not receive a fair trial because of cumulative error by the trial court. Cumulative trial errors, when considered collectively may be so significant as to require reversal of the defendant's conviction. Appellate courts must determine whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. However, if the evidence is overwhelmingly against the defendant, there can be no prejudicial error from this cumulative effect rule. *State v. Meeks*, 277 Kan. 609, 621, 88 P.3d 789 (2004).

To support his claim of cumulative error, Ross again highlights his claims that the trial court erroneously admitted evidence. As previously noted, the trial court did not err by admitting evidence of Ross' flight or his affiliation with a gang. Without error, there can be no cumulative error. *Meeks*, 277 Kan. at 621. Thus, this issue is without merit.

IV. Criminal history

Finally, Ross argues that the district court erroneously relied on his criminal history score without proving it to a jury beyond a reasonable doubt. This issue has previously been decided against Ross in *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002), where this court held that the defendant's criminal history score does not

have to be found beyond a reasonable doubt by a jury to satisfy *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). This court has subsequently reviewed its decision in *Ivory* on numerous occasions and found no reason to overrule *Ivory*. See, *e.g.*, *State v. Lackey*, 280 Kan. 190, 239-40, 120 P.3d 332 (2005).

Affirmed.

LOCKETT, J., Retired, assigned.