NOT DESIGNATED FOR PUBLICATION

No. 119,331

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BETHA JEAN THUMMEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sheridan District Court; KEVIN N. BERENS, judge. Opinion filed February 14, 2020. Affirmed.

*Reid T. Nelson* and *Debra J. Wilson*, of Capital and Conflicts Appeals Office, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and STANDRIDGE, JJ.

PER CURIAM: Betha Jean Thummel appeals following her convictions of four counts of felony theft from her former employer, PSI Transport, LLC. Thummel argues that the evidence was insufficient to support two of her convictions. Thummel also alleges that the district court erred in excluding certain evidence at trial, in denying her motion to dismiss, and in instructing the jury. For the reasons stated below, we find sufficient evidence to support the convictions she challenges and no error committed by the district court; accordingly, we affirm.

1

FACTS

From 2010 to 2014, Thummel was the office manager of PSI Transport, LLC, a cattle and feed dispatching business. In her position as office manager, Thummel was in charge of handling the payroll and paying all the bills. During the relevant time period, Scott Foote was the owner of PSI.

In March 2014, Steve Carter, the safety director for PSI, learned that Thummel had made some unauthorized purchases on a PSI credit card. After notifying Foote, Carter reviewed other accounts and credit card statements and discovered many other unauthorized purchases. Thummel was fired from PSI on March 19, 2014.

Carter reported the theft to the Sheridan County Sheriff. The sheriff ultimately turned the investigation over to the Kansas Bureau of Investigation (KBI). The KBI's investigation concluded that Thummel had used her position as the office manager at PSI to make numerous unauthorized purchases using company credit cards, a company checking account, and company credit accounts. The KBI also found that Thummel had adjusted her paycheck to include unauthorized wage and health insurance premium overpayments.

The State charged Thummel with five counts of felony theft. A jury found Thummel guilty of four of the counts. The district court sentenced Thummel to a 24-month term of probation and ordered her to pay PSI restitution in the amount of $63,908.73. Thummel filed this timely appeal. Additional facts will be set forth as necessary.

ANALYSIS

Thummel raises four issues on appeal. Thummel alleges (1) the evidence was insufficient to support two of her convictions of felony theft, (2) the district court erred in excluding evidence of a civil lawsuit she filed against PSI, (3) the district court erred in denying her motion to dismiss, and (4) the district court erred in denying her request to issue a jury instruction on spoliation. We address each of her allegations in turn.

1. *Sufficiency of the evidence*

Thummel argues the evidence presented at trial was insufficient to support convictions of felony theft as charged in counts 3 and 4. When the sufficiency of evidence is challenged in a criminal case, we review the claim by looking at all the evidence in a light most favorable to the prosecution and determining whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. An appellate court generally will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

The State alleged in count 3 of the third amended complaint that Thummel had taken approximately $16,400 in unauthorized wage overpayment from PSI. The State alleged in count 4 that Thummel had taken approximately $9,900 in unauthorized Blue Cross Blue Shield premium overpayments from PSI. Both counts 3 and 4 were charged as theft under K.S.A. 2018 Supp. 21-5801(a)(1). Under this subsection, theft is "[o]btaining or exerting unauthorized control over property or services" with the "intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." K.S.A. 2018 Supp. 21-5801(a)(1). Although not defined by statute, this court has held the term "unauthorized control" to mean "'control exercised over

3

property of another without the consent of the owner.'" *State v. Maxon*, 32 Kan. App. 2d 67, 76, 79 P.3d 202 (2003); see K.S.A. 2018 Supp. 21-5111.

At trial, Foote testified that he owned and ran several companies and spent only a small fraction of his time focused on PSI; he delegated most of the responsibility for running the day-to-day operations to his employees. He further testified that Thummel, in her position as the office manager for PSI, was responsible for handling the payroll and paying all the bills. Foote did not closely monitor or review Thummel's work, including her duties related to payroll. Foote said he relied on and trusted Thummel.

KBI Agent Clint Hawkins testified that through his investigation, he discovered that Thummel inflated the hours she actually worked by overcharging the company for carrying a dispatch phone after hours, which resulted in her receiving unearned and unauthorized overtime pay. His testimony was supported by physical exhibits, including Thummel's timesheets and pay stubs, showing how Hawkins arrived at his conclusions. Hawkins estimated the amount of overpayment was between $16,000 and $20,000. Hawkins' testimony was further supported by Foote, who said Thummel's pay records showed she reported an excessive number of days carrying a dispatch phone for which she received unauthorized overtime pay.

With respect to the insurance premiums, Foote testified that PSI paid up to $600 per month toward each employee's health insurance costs and that the employee was responsible for covering any additional costs above $600. Foote's testimony was supported by State's Exhibit 16, which outlined the costs of the company's insurance plan for employees. As the office manager, Thummel was responsible for ensuring that each employee's share of the health insurance premium was withdrawn from the paychecks. For many months, Thummel did not deduct the employee portion of the monthly health insurance premium from her paycheck or that of another employee, Ken Schaffer, shifting all of the costs to PSI. Foote testified that he never told Thummel that the

company would pay all of her insurance premiums or all the insurance premiums for Schaffer and therefore did not authorize her to pass those costs on to PSI.

Agent Hawkins testified that he questioned Thummel about the insurance premiums, and she did not deny that she failed to deduct payments from her paycheck; rather, she claimed that Foote told her the company would pay the entire cost of the premiums. Hawkins asked Foote about this, and Foote told him he "didn't know anything about it, and said they didn't have an agreement with [Thummel and Schaffer] to pay for their insurance." As set forth above, this was consistent with Foote's testimony, and the company policy outlined in Exhibit 16. Based on a review of PSI's health insurance plan and Thummel's and Schaffer's pay stubs, Hawkins estimated the amount of overpayment at approximately $10,000. Agent Hawkins explained to the jury in his testimony how he calculated the amount of the insurance overpayment, which was based on the costs as set forth in Exhibit 16, and how he arrived at an amount of approximately $10,000.

When viewed in the light most favorable to the State, the evidence presented at trial was sufficient to support the jury's finding that Thummel used her position as the bookkeeper for PSI to both overpay herself and to pass her insurance premium payments on to the company without authorization or consent from the company.

But Thummel claims the State failed to establish that she obtained or exerted unauthorized control over PSI's property as required for these two convictions under subsection (a)(1) of K.S.A. 2018 Supp. 21-5801. First, Thummel argues that by signing her paychecks, Foote actually *authorized* any overpayment, which necessarily brings her acts outside the crimes of conviction under K.S.A. 2018 Supp. 21-5801(a)(1). We are not persuaded by Thummel's argument that Foote authorized the theft by signing her paychecks. Foote testified that he delegated most of the responsibility for PSI's day-to-day operations to his employees. Foote further testified that he trusted Thummel to do the payroll correctly and honestly and that he did not closely monitor or review her work.

5

While Foote admitted that he signed Thummel's paychecks, he explicitly denied that he authorized her to take unearned funds from PSI.

Second, Thummel argues she did not have any ownership interest in PSI's bank account and therefore could not cash her paycheck without Foote's signature; therefore, she literally could not have exercised unauthorized control over the unearned wages and overpayments in her paychecks before those paychecks were signed by Foote. Thummel suggests the evidence instead showed that she obtained Foote's authorization for the overpayments through deception as set forth in K.S.A. 2018 Supp. 21-5801(a)(2). In support of her suggestion, Thummel reasons that Foote trusted and relied on her as the company bookkeeper to ensure accuracy, which demonstrates theft by deception (K.S.A. 2018 Supp. 21-5801[a][2]) rather than theft by unauthorized control (K.S.A. 2018 Supp. 21-5801[a][1]). The flaw with Thummel's reasoning, however, is that the facts presented establish Thummel's crime as one of embezzlement under Kansas caselaw, and our Supreme Court has held that embezzlement is properly charged under K.S.A. 2018 Supp. 21-5801(a)(1).

In *State v. Rios*, 246 Kan. 517, 527, 792 P.2d 1065 (1990), *abrogated on other grounds by State v. Ward*, 307 Kan. 245, 408 P.3d 954 (2018), the Kansas Supreme Court explained that before 1969, when the various crimes of theft were consolidated into a single statute, K.S.A. 21-545 defined the crime of embezzlement:

> "'[A]ny officer, clerk, agent, employee or servant of any corporation . . . or any person employed in such capacity . . . who shall embezzle or convert to his [or her] own use, or shall take, make away with, or secrete, with intent to convert to his [or her] own use, without the assent of his [or her] employer, any money . . . shall upon conviction thereof be punished in the manner' prescribed by law for stealing property." (Quoting K.S.A. 21-545 [Corrick]).

6

The *Rios* court went on to explain that "[t]he former crime of embezzlement is now included in section (a) of K.S.A. 21-3701 relating to obtaining or exerting unauthorized control over property." 246 Kan. at 527. Relevant here, K.S.A. 21-3701 is the predecessor of the current K.S.A. 21-5801, which went into effect in 2010 as part of the general Criminal Code Recodification. The recodification of K.S.A. 21-3701 to K.S.A. 21-5801 made no substantive changes to the elements of theft.

Although different than those presented here, the facts in *Rios* are instructive. Two employees from two separate Dillard's department stores were charged with theft by deception (among other charges) under K.S.A. 21-3701(b) (obtaining control over property by deception with the intent to deprive the owner permanently of the property). Both employees were store managers of their respective stores who were authorized to access all money at the stores. Each manager stole store funds and then created bogus refund vouchers to hide the theft from their employer. Following their convictions for theft by deception, the argument they presented on appeal is the reverse of the argument presented by Thummel here:  that their conduct in stealing store funds properly fell under the subsection defining theft by unauthorized control, rather than the subsection defining theft by deception. The Kansas Supreme Court agreed. *Rios*, 246 Kan. at 527-28.

Distinguishing theft by deception from theft by unauthorized control, the court observed that theft by deception requires, as an element, a false statement or representation that deceives the victim and that the victim relies on in giving up control of his or her money. *Rios*, 246 Kan. at 527. The court found the false statement element was lacking in the *Rios* case:  "The owner (Dillard's) placed defendants in charge of the respective stores. There is no deception claimed to be involved in the obtaining of these positions." 246 Kan. at 527. The court found that the defendants' acts of theft involved exerting unauthorized control, not theft by deception. 246 Kan. at 528.

7

The court illustrated the difference between theft by unauthorized control and theft by deception with the following analogy:

> "A farmer hires a fox to be in charge of his chicken house. There is no deception by the fox in obtaining his position. The fox has full access to all parts of the operation as a part of his job. Let us assume the fox starts stealing eggs from the egg storage area. To cover up the thefts, he replaces each stolen egg with a plastic one, or, perhaps, falsifies the records as to how many eggs have been laid. In such case, no theft by deception has occurred. The farmer has not been induced to part with the control of property through deception. The crime of embezzlement, now included within K.S.A. 21-3701(a), has been committed.
>
> "By contrast, let us suppose a fox con artist approaches the farmer, stating he represents a wealthy eccentric who will pay twice the market price for eggs but who will only deal anonymously through the fox. The farmer turns his eggs over to the fox on the latter's promise that he will return the following morning with payment therefor in cash. The fox never returns. The farmer is a victim of theft by deception as he parted with his property as the result of the false statements." *Rios*, 246 Kan. at 527-28.

Applying this analogy here, Foote hired Thummel to be his office manager and bookkeeper for his company, PSI. Thummel engaged in no deception in obtaining this position. In her position, she had full access to all of the finances of the company. She then used her legitimate position to steal from the company—just as the fox in the analogy and the defendants in *Rios* did—by adjusting her paycheck to include unauthorized wage and health insurance premium overpayments.

That Thummel abused the trust of her position and took advantage of Foote's harried pace and inability to spend much time focusing on PSI does not insulate Thummel from accountability, nor does it inject an element of deception into her crime. Thummel's actions clearly fit the definition of embezzlement, which the Kansas Supreme Court has held is properly charged as theft by unauthorized control (or taking) under K.S.A. 2018 Supp. 21-5801(a)(1).

8

Notably, the holding in *Rios* is supported by subsequent case decisions. In *State v. Boor*, No. 112,539, 2016 WL 97856 (Kan. App. 2016) (unpublished opinion), a case like this one involving a bookkeeper who stole from her employer, a panel of this court reversed a conviction for theft by deception because the defendant's conduct constituted embezzlement. In *Boor*, the defendant was charged in the way Thummel suggests she should have been charged, with theft by deception under the theory that the defendant stole her employer's money through falsified deposit slips. But citing the fox analogy from *Rios*, the court found there was no deception in the defendant obtaining her position as a bookkeeper. Rather, the defendant "was the fox who the farmer hired to run the chicken house" and, once employed as a bookkeeper, used her position to steal money and embezzle from her employer. 2016 WL 97856, at *3.

And just as Thummel argues here, the State in *Boor* argued that *State v. Saylor*, 228 Kan. 498, 618 P.2d 1166 (1980), supported charging the defendant with theft by deception. In *Saylor*, the defendant concealed merchandise in a box purportedly containing merchandise sold at a lower price, which purportedly deceived the retail cashier at the point of purchase. But the *Boor* court found "[t]he State's reliance on *Saylor* is unpersuasive because its facts do not analogize to those in the present case." 2016 WL 97856, at *3. That was because Boor "did not obtain control of the deposits through deception." 2016 WL 97856, at *3. Rather, after legitimately gaining control over the money, Boor then diverted it to her own use without authorization. The State's argument in *Boor*—and Thummel's argument here—"fails because the false representation must be made such that it causes the owner of the property to entrust the property to the thief." 2016 WL 97856, at *3. No such misrepresentation was made in *Boor*, and no such misrepresentation was made in this case.

Another panel of our court ruled similarly in *State v. Ricke*, No. 113,852, 2016 WL 4736779 (Kan. App. 2016) (unpublished opinion). There, an employee of a rental property management company diverted rent payments to her own use and covered the

diversion with collections of past due accounts obtained through a collection agency. Although she originally was charged with theft by exerting unauthorized control, she went to trial on an amended information charging her with theft by deception. On appeal from her conviction, the court noted that a conviction for theft by deception requires proof that "the defendant gained control over the property by means of misrepresentations. Misrepresentations made after the defendant gains such control are insufficient." 2016 WL 4736779, at *7. The court noted that the defendant in *Ricke* did not obtain her employment by means of deception or misrepresentation but instead used her position at the property management company, which she legitimately secured without any deception at all, to access her employer's money and steal it. The court held these facts were insufficient to support a conviction of theft by deception. 2016 WL 4736779, at *7-8.

As in *Rios*, *Boor*, and *Ricke*, Thummel legitimately obtained her employment, without any deception, but then used her position to divert her employer's money, without authorization, to her own use. Thummel properly was charged with theft by exerting unauthorized control and, when viewed in the light most favorable to the State, the evidence presented at trial was sufficient for a rational fact-finder to find Thummel guilty of those charges beyond a reasonable doubt.

2. *Evidence regarding Thummel's civil lawsuit*

Thummel argues the district court erred by preventing her from introducing evidence of a civil lawsuit she filed against PSI in federal court. Thummel claims that this evidence would have shown that Foote was biased against her and had a financial motive to testify falsely against her.

Appellate courts review a district court's decision to admit evidence using a two-step process. First, we determine whether the evidence is relevant. Generally, all evidence

is admissible if relevant. K.S.A. 60-407(f). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). This definition encompasses two elements: whether the evidence is material and whether the evidence is probative. Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. Evidence is probative if it furnishes, establishes, or contributes toward proof. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). This court reviews the materiality of evidence de novo, while we review the district court's decision regarding the probative value of evidence for abuse of discretion. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013).

Even if evidence is relevant, a district court may exclude it if the court determines the probative value of the evidence is outweighed by its potential for producing undue prejudice. K.S.A. 60-445. We review this aspect of the test for abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court, (2) it is based on an error of law, or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Having set forth the standard of proof and the standard of review, we review the evidence in some detail as it came in during trial. After Thummel was fired from PSI in March 2014, she retained an attorney to represent her with respect to certain employment claims against PSI. On April 22, 2014, Thummel's attorney sent a letter to Foote detailing her claims of defamation, retaliatory discharge, and violations of the Fair Labor Standards Act (FLSA), the Family Medical Leave Act (FMLA), and Title VII. Foote did not respond to the letter. On September 11, 2014, Thummel filed a complaint in the United States District Court for the District of Kansas against PSI alleging the same claims set forth in the April 22 letter.

11

At trial, defense counsel sought to introduce the complaint into evidence. The district court denied defense counsel's request on grounds that it was more prejudicial than probative. Later, during Foote's cross-examination, defense counsel questioned him about the April 22 letter. Foote acknowledged that he had received a letter from Thummel's attorney about 30 days after Thummel was fired from PSI. Foote testified that he did not respond to the letter because he thought it was ridiculous. Defense counsel then asked the court for permission to introduce the letter into evidence. The prosecutor objected, arguing the allegations of wrongdoing in the letter were not relevant. Outside the presence of the jury, the prosecutor advised the court that he did not object to informing the jury that Thummel had filed a wrongful termination claim, but he did not want the jury to be informed about the specific claims detailed in the letter. In response, defense counsel argued that the letter was relevant to Thummel's defense; specifically, that PSI was guilty of wage claim violations and the letter would show that Foote was biased against her. The district court ultimately denied counsel's request to introduce the letter into evidence, finding that—like the civil complaint—it was more prejudicial than probative. The court, however, did allow counsel to question Foote generally about the fact that Thummel had alleged multiple claims against PSI in the complaint. But the court ruled that counsel could not question Foote about the specific allegations relating to each claim as detailed in the letter.

Following the district court's ruling, defense counsel elicited testimony from Foote that the April 22 letter alleged a claim of defamation as well as violations of the FLSA, the Occupational Safety and Health Act (OSHA), the FMLA, and Title VII. Foote denied the claims and testified that he did not respond to the letter. Foote agreed that Thummel had filed a complaint on September 11, 2014, in federal court alleging the same claims and violations as those set forth in the letter. Finally, Foote testified that the civil case had been stayed during Thummel's criminal proceedings.

Defense counsel proffered for the record Exhibit N, the April 22 letter, and Exhibit O, the civil complaint. Both documents contained factual allegations relating to each of Thummel's claims against PSI, including that (1) Thummel had worked approximately 80 hours per week at PSI without receiving overtime pay, (2) Thummel's termination was motivated in whole or in part by the fact that her brother had filed an OSHA complaint against PSI, (3) Thummel had been sexually harassed while working at PSI, (4) PSI did not comply with the FMLA after Thummel had back surgery, and (5) PSI owners and representatives made defamatory statements about Thummel following her termination.

a. *Relevance*

Thummel argues that the district court's exclusion of additional evidence about her lawsuit against PSI was improper. Thummel asserts that evidence relating to the specific basis for each of the claims against PSI was relevant to show that Foote (1) had a personal bias against Thummel, (2) had a financial incentive to make false claims against Thummel, and (3) had a motive to destroy exculpatory evidence.

Evidence of the lawsuit was relevant because it had a tendency to prove that Foote had a motive to make false allegations against Thummel. The evidence was material because it pertained to a disputed issue—whether Thummel committed theft. The evidence would help to establish the weight or credibility of Foote's testimony detailing all the ways that Thummel had committed theft. Indeed, "an ongoing civil lawsuit involving the defendant and affecting the pecuniary interests of the State's witnesses is relevant impeachment evidence that may be explored on cross-examination during the criminal trial." *State v. Thomas*, 307 Kan. 733, 739-40, 415 P.3d 430 (2018); see *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249 (2006) ("'[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled

to assess all evidence which might bear on the accuracy and truth of a witness' testimony.'").

b. *Prejudice*

Even if the evidence was relevant, however, a district court has discretion under K.S.A. 60-445 to exclude relevant evidence upon a finding that its probative value is outweighed by its potential for producing undue prejudice. Here, the district court denied defense counsel's request to introduce the civil complaint and the April 22 letter into evidence after finding that the probative value of each was outweighed by its potential for producing prejudice. Notably, however, the court did not exclude evidence of Thummel's lawsuit in its entirety. The court allowed defense counsel to question Foote generally about the claims set forth in the lawsuit; the court only excluded the specific allegations underlying each claim. Thummel argues that the court's ruling rendered evidence of the lawsuit worthless to show Foote's bias and motives because the jury was kept in the dark about whether the lawsuit had any basis in fact or law.

Contrary to Thummel's argument, the fact that Thummel had filed a complaint against PSI was ample evidence to establish Foote's potential bias against her. There is no indication that the specific factual allegations underlying Thummel's claims could have provided an additional basis to impeach Foote's testimony. Moreover, whether Thummel's civil claims against PSI had merit was not properly before the jury for consideration. Notably, the evidence before the jury was that the civil case was stayed pending Thummel's criminal trial and had not yet been resolved in federal court. Introducing the unresolved factual allegations underlying Thummel's claims against PSI would have only served to confuse the jury and resulted in improper litigation of the civil claims during the criminal trial.

We note that our Supreme Court reversed a district court that "cut off completely the right of the defendant to cross-examine those witnesses who had been defrauded and whose testimony was absolutely necessary to a conviction, as to their being parties to the civil action brought by him against them and interested in the outcome of the criminal action." *State v. Rowland*, 172 Kan. 224, 229, 239 P.2d 949 (1952). Here, however, the district court did not cut off completely Thummel's ability to confront Foote through cross-examination. Instead, the court allowed defense counsel to establish that Thummel had filed a civil complaint against PSI while imposing reasonable limits that were based on legitimate concerns of potential prejudice. And Thummel was allowed to testify about many of the issues she raised in the complaint, including allegations that she had worked overtime hours, that she had been fired because of her brother's OSHA complaint, and that she was not given time off work following her back surgery.

Again, we review for abuse of discretion the district court's decision regarding whether the probative value of relevant evidence is outweighed by its potential for producing undue prejudice. See *Lowrance*, 298 Kan. at 291. We find no abuse of discretion here.

### 3. *Motion to dismiss*

Thummel argues the district court erred in denying her motion to dismiss based on the State's failure to preserve evidence.

When reviewing a district court's decision to deny a motion to dismiss, the standard of review is determined by the ground on which dismissal was sought. *State v. Garcia*, 282 Kan. 252, 259, 144 P.3d 684 (2006). Before trial, Thummel filed a motion to dismiss alleging that the State had violated her right to due process by (1) failing to preserve favorable material evidence from her work computer and/or (2) acting in bad faith by failing to obtain potentially exculpatory evidence from her work computer.

15

Whether the State failed to preserve favorable material evidence or exercised bad faith in failing to preserve evidence is a question of fact. Therefore, we review the district court's findings to determine whether the findings were supported by substantial competent evidence and, if they were, we then determine whether those findings were sufficient to support the court's conclusions of law. See *State v. Finley*, 273 Kan. 237, 241, 42 P.3d 723 (2002). We have unlimited review over the district court's legal conclusions. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007).

At an evidentiary hearing on Thummel's motion to dismiss, Thummel testified that the computer she used at work contained e-mails, spreadsheets, and receipts that were significant to the case and would show that she was authorized to make certain purchases which the State alleged were thefts.

Sheridan County Sheriff Brandon Carver testified that Thummel's first alleged theft was reported on March 20, 2014. The next day, Carver obtained documents relating to the theft from PSI, including e-mails, Amazon purchases, and credit card financial information. Carver did not search, seize, or secure Thummel's work computer or hard drive, which remained in PSI's possession. Carver testified that he did not believe seizure of Thummel's computer was necessary because he did not know that it contained any relevant information. Before this case, Carver had investigated one financial crime, which involved a stolen debit card. Carver contacted the KBI to assist with the case.

On April 23, 2014, Agent Hawkins met with Carver, Foote, and Carter. Hawkins obtained documents relating to the theft but did not examine, seize, or secure Thummel's work computer at that time or direct the sheriff's office to do so. Hawkins obtained PSI's bank statements on May 16, 2014. Hawkins testified that the KBI did not typically seize computers from business victims, especially when the primary source of information came from bank records. After learning that Thummel's work computer might contain exculpatory information, Hawkins secured the hard drive for forensic testing on March 1,

2016. By this time, the hard drive had been wiped clean and had been used by other PSI employees.

Foote denied Thummel's allegation that he had destroyed evidence on the computer's hard drive or that he had directed anyone to do so. Carter testified that he had access to Thummel's computer after she was terminated from PSI. Carter said he transferred Thummel's e-mails, Excel spreadsheets, and other files to his computer using a thumb drive. Carter also had Thummel's e-mails rerouted to him. Carter denied deleting anything from Thummel's computer.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to provide to the defense all exculpatory evidence that is material to the guilt of the defendant. See *United States v. Agurs*, 427 U.S. 97, 111, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The State also has the duty to preserve material evidence that "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). But there is no absolute duty to retain and preserve all material that *might* be significant evidence in a particular case. Failure to preserve such evidence constitutes a denial of due process only if the defendant can show the State acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The presence or absence of bad faith requires a showing that the State knew about the exculpatory nature of the evidence at the time it was lost or destroyed. *State v. LaMae*, 268 Kan. 544, 551, 998 P.2d 106 (2000).

After considering the testimony outlined above, as well as oral and written argument from the parties, the district court filed a written order denying Thummel's motion to dismiss. Specifically, the court held that the potentially exculpatory nature of

17

any information on Thummel's hard drive was not apparent before it was deleted, that the evidence was of such a nature that it could be obtained by other reasonably available means, and that Thummel failed to establish that the State had acted in bad faith.

Significantly, Thummel does not allege that the State destroyed evidence in this case. Instead, Thummel's due process claim is based on the State's failure to timely *preserve* the alleged exculpatory evidence on her hard drive before it was destroyed by PSI. Thummel contends that this evidence could have helped her to defend against the criminal charges and provided support for her claims against Foote in the civil case. Thummel appears to concede that the exculpatory nature of the evidence was not evident prior to its destruction. Therefore, in order to prevail, she must establish that the State acted in bad faith by failing to secure the hard drive and by leaving it with PSI, who had a motive to manipulate the evidence. In support of bad faith, Thummel suggests that Hawkins was aware of her lawsuit against PSI and therefore should have examined her computer as a source of digital evidence rather than simply accepting the documentary evidence provided by PSI at face value.

The Tenth Circuit Court of Appeals has identified five factors relevant to the bad-faith determination:  (1) whether the government had explicit notice that defendant believed the evidence to be potentially exculpatory; (2) whether defendant's assertion that the evidence possessed potential exculpatory value was merely conclusory or was supported by objective, independent evidence; (3) whether the government had possession of or the ability to control disposition of the evidence at the time it received notice of its potential exculpatory value; (4) whether the destroyed evidence was central to the government's case; and (5) whether the government offers an innocent explanation for its failure to preserve the evidence. See *United States v. Beckstead*, 500 F.3d 1154, 1159-61 (10th Cir. 2007); *United States v. Bohl*, 25 F.3d 904, 911-13 (10th Cir. 1994).

Applying these factors to Thummel's case weighs in favor of a finding that the State did not act in bad faith in failing to secure her computer before any evidence was removed. Although Thummel did provide the State with explicit notice that potentially exculpatory evidence was on her work computer, she did not do so until after that evidence had been removed from the computer. On April 30, 2015, Thummel filed a motion for discovery. This motion made no request to preserve or examine Thummel's work computer or hard drive. On January 11, 2016, Thummel filed a supplemental motion for discovery requesting to inspect and copy her PSI work computer. Law enforcement did not have possession of Thummel's computer at this time. On March 1, 2016, Hawkins recovered the hard drive from PSI and submitted it for examination. No useful information was discovered, as the hard drive appeared to have been wiped clean by a non-State actor on May 12, 2014, and had since been used by other PSI employees. Thummel claimed that she told Hawkins in May 2015 that there was exculpatory evidence on her computer, but Hawkins did not recall this conversation. Even if this conversation did occur, however, it was long after any relevant evidence could have been found on Thummel's computer.

In addition, Thummel's assertion that her hard drive possessed potential exculpatory value was conclusory and was unsupported by objective, independent evidence. And there are no facts in the record to show that any evidence on the hard drive was central to the State's case; instead, the State introduced into evidence numerous documentary exhibits to support its claims against Thummel. Finally, both Carver and Hawkins offered innocent explanations for their failure to inspect or secure Thummel's computer at the time of the initial investigation. Carver testified that although he knew some of PSI's documents were printed from a computer, he had no way of knowing what computer they came from and had no reason to believe that any additional evidence would be found on Thummel's computer. Hawkins testified that it was not common practice to seize computers from operating businesses, especially when the evidence consisted mainly of bank records and other financial documents. Hawkins said he would

19

only seize a computer if he had information or reason to believe that evidence of a crime was on a specific computer. Hawkins had no such information at the time of the initial investigation. By the time law enforcement had reason to suspect that any useful information could be found on Thummel's computer, that information already had been removed. Thummel's suggestion that Hawkins should have secured her computer because she had filed a civil complaint against PSI is without merit. Even if Hawkins knew about Thummel's civil lawsuit, mere knowledge of the lawsuit did not provide him a reason to believe that any relevant evidence would be found on her computer. To the extent that law enforcement was negligent in failing to secure Thummel's computer, mere negligence on the government's part in failing to preserve evidence is inadequate to show bad faith. *Bohl*, 25 F.3d at 912.

Substantial competent evidence supported the district court's finding that law enforcement did not act in bad faith in failing to secure or search Thummel's computer before evidence was removed from the hard drive, which in turn supported the court's legal conclusion that Thummel failed to establish a due process violation warranting dismissal of the claims against her. The district court did not err in denying Thummel's motion to dismiss.

4. *Jury instruction on spoliation*

Thummel argues the district court erred by denying her request to give the jury an adverse inference or "spoliation" instruction. According to Thummel, a spoliation instruction should have advised the jury it could infer that the evidence the State failed to preserve on her computer would have been adverse to the State.

The standard of review for jury instruction issues on appeal is well known:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016).

At the first step, there is no dispute that Thummel properly preserved this issue for appellate review by requesting that the following instruction be provided to the jury:

### "SPO[LI]ATION

"If a party to this case has failed to offer evidence within his power to produce, you may infer that the evidence would have been adverse to that party, if you believe each of the following elements:

"1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.

"2. The evidence was not equally available to an adverse party.

"3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he had believed it would be favorable to him.

"4. No reasonable excuse for the failure has been shown."

At the instructions conference, defense counsel argued that although the spoliation instruction was not included in the pattern jury instructions in Kansas, it was allowed in civil cases when evidence was lost. Counsel claimed that the instruction was proper in this criminal case because (1) Thummel's computer was in PSI's control and could have been preserved with reasonable diligence, (2) the computer was not equally available to Thummel, and (3) PSI provided no reasonable excuse for failing to preserve the evidence. The district court denied Thummel's request, ruling that the instruction did not apply in

21

criminal cases and that the evidence was alleged to have been destroyed by PSI and was never under the State's control.

At the second and third step, this court determines if the district court's refusal to give the instruction was error by deciding whether the instruction was both legally and factually appropriate. See *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018). We exercise unlimited review to determine whether the instruction was legally appropriate. We then determine whether the instruction was factually appropriate by considering the evidence in the light most favorable to the defendant. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016).

To be legally appropriate, a jury instruction must fairly and accurately state the applicable law. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). The spoliation instruction is not included in Kansas' pattern jury instructions. See PIK Crim. 4th; PIK Civ. 4th. While the use of PIK instructions is encouraged, "a district court should not hesitate to modify or add to pattern instructions where appropriate in a particular case." *State v. Kahler*, 307 Kan. 374, 397, 410 P.3d 105 (2018). This court has held that a district court has the authority to give a spoliation instruction "when the State has destroyed evidence in bad faith." *State v. Romero*, No. 89,899, 2004 WL 1086967, at *4 (Kan. App. 2004) (unpublished opinion); see *State v. Garner*, No. 108,040, 2013 WL 4046409, at *5 (Kan. App. 2013) (unpublished opinion) (finding no error in failure to instruct jury on spoliation where defendant failed to establish that State destroyed evidence in bad faith). Here, the State does not allege that Thummel's spoliation instruction is a misstatement of the law. Because it fairly and accurately states the applicable law, the instruction is legally appropriate. See *Plummer*, 295 Kan. at 161.

But even if the instruction was legally appropriate, it was not factually appropriate in this case because Thummel failed to establish that the State destroyed evidence in bad faith. Indeed, Thummel's argument is not that the State destroyed the evidence but that

22

the State's failure to secure her work computer resulted in the destruction of the evidence by PSI. As previously discussed, there is no evidence that the State's failure to secure the computer was the result of malice, ill will, or bad faith. Nor is there any evidence of bad faith on the part of PSI. But even if there were, any bad faith by PSI could not be attributed to the State for purposes of giving a spoliation instruction.

To the extent that Thummel relies on caselaw from other jurisdictions to argue that the spoliation instruction may be given even in the absence of bad faith by the investigative agency, this argument lacks merit. Thummel's requested instruction provided that the jury could make an adverse inference "[i]f a party to this case has failed to offer evidence within his power to produce." The evidence here was not within the State's power to produce. PSI had control of Thummel's computer at all times before any evidence was removed from it. Law enforcement had no reasonable basis to believe that any evidence, exculpatory or otherwise, was on the computer until well after any potentially exculpatory evidence had been removed.

The evidence in this case, viewed in the light most favorable to Thummel, did not support a spoliation instruction. Therefore, the district court did not err in denying Thummel's request to so instruct the jury.

Affirmed.