No. 74,007

STATE OF KANSAS, *Appellee*, v. CHARLES T. ROBERTS, *Appellant*.

931 P.2d 683

Opinion filed January 24, 1997.

*Thomas Jacquinot*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Charles T. Roberts appeals from his conviction of first-degree murder. He claims that the trial court abused its discretion by (1) admitting evidence of "gang relationship"; (2) denying evidence of "gang relationship" on his behalf; and (3) admitting his photograph at trial. The defendant also contends that there is insufficient evidence to support his conviction because the evidence

supports that he acted in self-defense. For the reasons stated below, we affirm.

The defendant was charged with first-degree murder, K.S.A. 21-3401(a), aggravated battery, K.S.A. 21-3414(a)(1)(B), and criminal possession of a firearm, K.S.A. 21-4204(a)(2). The charges stemmed from an shooting encounter between the defendant, the victim Myron Hutton, and Carnell Washington. Prior to trial the defendant pled guilty to criminal possession of a firearm, which is not subject to this appeal. The defendant was acquitted of the charge of aggravated battery.

The evening of the shooting, the defendant and several friends went to a car wash near his home. His friend known as "Moon" had bought a new car that afternoon and they were cleaning the car. The defendant walked behind the car wash wall to relieve himself. At the same time, Hutton and Carnell Washington were passing by in Hutton's car. They noted that the car wash was crowded and decided to drive through and around the car wash.

The defendant, Hutton, and Carnell Washington encountered each other as Hutton drove his car behind the car wash. While the exact details of the shooting are contradicted, it is uncontroverted that the defendant pulled a gun from his waistband and shot twice into the car. Carnell Washington, who was in the passenger's seat, testified that despite the fact that both he and Hutton had loaded weapons with them in the car, neither he nor Hutton made any threatening motion with their guns toward the defendant. Carnell Washington heard the defendant say something in greeting and then he heard shots.

Hutton immediately slumped towards Carnell Washington after the shots rang out, and the car moved forward until the engine stalled. With the assistance of a bystander at the car wash, Carnell Washington moved Hutton into the passenger seat and drove to Wesley Hospital. En route, he saw Hutton's cousin, Tony Dean, on the street and called him for help. The three men proceeded to the hospital, on the way they threw away the gun that Carnell Washington had carried in the car.

Hutton died at the hospital from a gunshot wound to the chest. Carnell Washington and Dean were interviewed at the hospital by

the police. Carnell Washington identified the defendant as the shooter. Police investigators were sent to the car wash and to the defendant's home. The police found shell casings at the car wash and with a tip from a neighbor found the gun hidden by the defendant in a field next to the car wash. Based upon ballistic tests, it was determined that the bullet found in the victim's car and the ejected casings found at the car wash matched the gun found in the field.

The defendant testified that when he was confronted by Hutton and Carnell Washington behind the car wash, he saw that both men held guns in their hands. Fearing for what might happen, he reacted by pulling the gun from his waistband and shooting. In a panic, he ran home. As he passed through a field he hid his gun in a water duct. When he arrived home, he changed clothes and left again. With assistance from a friend, he traveled to Oklahoma City and remained there for approximately 5 weeks, at which point he returned to his family in order to surrender to the police.

At trial, the defendant asserted self-defense. As a foundation for the fear he had of Hutton, their past conflicts were thoroughly developed for the jury. Two years before the shooting, Hutton and the defendant fought during halftime at a high school basketball game. The defendant stated that the reason for that fight was that Hutton had harassed his sister. The defendant testified that he and Hutton spoke a week later about the fight and he felt the problem was resolved. A year later, the two men had another confrontation at a movie theater. The defendant said that they were about to fight again, but the fight was prevented by his friends.

On the day of the shooting, the two men were somewhat antagonistic toward each other. A short while before the defendant went to the car wash, he and his friends were parked in an apartment complex driveway speaking with the defendant's sister and her friend. Hutton and Carnell Washington drove by, playing music at a high volume. Hutton, Carnell Washington, and the defendant exchanged glances.

The defendant also spoke of the fact that he had been a victim in a recent drive-by shooting at which a close friend, Don Shay Lewis, died. Two days after that event, he was threatened by a

group of men who shot at his car as he drove away from them. The defendant stated that he was living in fear of his life.

In addition to his own testimony on self-defense, the defendant presented a supporting witness, Larry Washington. Larry Washington testified about a conversation he had with his uncle, Carnell Washington, on a jail bus. According to Larry, Carnell told him that he was about to shoot the defendant when he and Hutton met him at the car wash. After this conversation on the bus, Larry Washington was placed in the same incarceration pod with the defendant. At that time, Larry Washington reduced the content of his conversation with Carnell to writing and gave the letter to the defendant to send to the defendant's attorney.

## GANG MEMBERSHIP

### State's Evidence

At trial, the State called Officer Brad Carey as a rebuttal witness to testify generally about gang membership in Sedgwick County and specifically about the gang affiliation of the defendant, Larry Washington, and Don Shay Lewis. The State, during its proffer of this testimony, argued that the evidence was relevant in several ways. First, the State noted that both the defendant and Larry Washington testified that they were not members of any gang. The State wished to rebut their testimony with Carey's report that both had been identified as members of the Neighborhood Crips. Further, the State wished Carey to address the fact that gang members are known to lie for each other. The State argued that this information was relevant as to credibility. After hearing the State's proffer, the trial court concluded that the State's evidence was relevant and admissible.

The defendant alleges that the evidence of his alleged gang affiliation and that of Larry Washington and Lewis is irrelevant to the shooting and unduly prejudicial towards the defendant. The defendant argues that the court "let the state wave an inflammatory flag and frighten the jury with references to the Neighborhood Crips. It didn't give a limiting instruction." The defendant argues that the gang evidence was inadmissible to prove bias or credibility

of witnesses and, further, that the admission violated his constitutional rights to free association.

We have recently addressed the issue of whether gang affiliation as proof of bias could be relevant evidence. We stated:

"The probative value of evidence of gang membership as it pertains to witness bias is high. In *United States v. Abel*, 469 U.S. 45, 49, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984), the United States Supreme Court held that evidence of gang membership is probative of witness bias, and that '[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. 469 U.S. at 52." *State v. Knighten*, 260 Kan. 47, 54, 917 P.2d 1324 (1996).

In *Knighten*, the court noted that the only witnesses not incriminating the defendant were all members of the defendant's gang. The *Knighten* court rejected the defendant's argument that bias could have been established without mentioning gang membership simply by showing that the witnesses were friends of the defendant. The court stated: "Simple friendship does not create the same inference of incentive to protect another person that is created by evidence of membership in the same gang." 260 Kan. at 55.

The reasoning in *Knighten* is applicable in the present case. The information that Larry Washington and the defendant are members of the same gang supports the inference that Larry Washington may have been compelled to lie during his testimony about Carnell Washington's aggression. Larry Washington is the sole witness who corroborates the defendant's assertion of self-defense. Therefore, Officer Carey's testimony is directly relevant to the issue of bias, and the trial court did not abuse its discretion here.

As a side point, the defendant notes that comparable but opposing bias arises from Larry Washington's and Carnell Washington's familial relationship. Larry is the nephew of Carnell. The jury was given the information that the witnesses were related. The issue of whether a particular bias, a familial versus a gang relationship, is stronger than the other to impeach testimony goes to the weight of evidence. The weight of evidence is within the prerogative of the jury and is not for this court to review. *State v. Bowen*, 254 Kan. 618, 631, 867 P.2d 1024 (1994).

The defendant argues that under *Dawson v. Delaware*, 503 U.S. 159, 117 L. Ed. 2d 309, 112 S. Ct. 1093 (1992), the admission of the defendant's gang affiliation violates his constitutional right to free association under the First and Fourteenth Amendments. In *Dawson*, the United States Supreme Court determined that irrelevant evidence of the defendant's membership in the Aryan Brotherhood introduced in the sentencing phase of the defendant's trial violated his constitutional rights. 503 U.S. at 167.

This identical argument has been advanced twice before in Kansas. See *State v. Tran*, 252 Kan. 494, 503, 847 P.2d 680 (1993); *State v. Walker*, 252 Kan. 117, 843 P.2d 203 (1992). Most recently, in *Tran*, we said:

"*Dawson* does not stand for the position that such evidence must always be excluded. In fact, *United States v. Abel*, 469 U.S. 45, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984), held that evidence of gang membership was probative of witness bias, and its probative value outweighed the potential for prejudice. *Dawson* does not overrule or limit *Abel*; we read *Dawson* as applying to the sentencing fact scenario." 252 Kan. at 503-04.

As explained above, the gang evidence is relevant to credibility and bias at trial. The exclusionary rule of *Dawson* does not apply here.

Further, the evidence of Larry Washington's and the defendant's gang affiliation was offered to suggest that the witnesses may have been committing perjury for a fellow gang member. In *Tran*, we stated:

"First and Fourteenth Amendment association rights are not viewed in a vacuum. Criminal associations are not protected. First and Fourteenth Amendment association rights do not bar admission of evidence of gang association." 252 Kan. 494, Syl. ¶ 3.

Finally, the defendant argues that the admission of the gang affiliation of the defendant's friend, Lewis, who was killed in a drive-by shooting at which the defendant was also a victim, is an abuse of the trial court's discretion. We agree with the defendant that the admission of this evidence does not appear to support any material fact at issue in the case. However, such a conclusion does not end our inquiry.

The defendant has not demonstrated how such evidence materially prejudiced his rights. If anything, the death of Lewis at the

hands of a rival gang was used by the defendant in his defense to establish the defendant's frame of mind at the car wash. "Errors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done." *State v. Peltier*, 249 Kan. 415, Syl. ¶ 4, 819 P.2d 628, *cert. denied* 505 U.S. 1207 (1991). The defendant bears the burden of showing substantial prejudice before this court will reverse on the basis of an abuse of discretion. *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992).

The defendant argues that the evidence of Lewis' gang affiliation, coupled with exclusion of other gang evidence to be addressed in the second issue on appeal below, denied him his right to present a defense. However, the record demonstrates that the defendant was able to present evidence on the aggression of Hutton and Carnell Washington as well as the defendant's necessity for self-defense. We conclude that the admission of this evidence was harmless and provides no basis for reversal.

One final matter regarding limiting instructions concerning gang evidence needs to be reviewed. In this case, no such instruction was requested. Our standard of review under these circumstances is well established:

"No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of the objection unless the instruction is clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict." *State v. Whitaker*, 255 Kan. 118, 125, 872 P.2d 278 (1994)."

While a limiting instruction might be favorable in this situation, it is within the trial court's discretion to instruct on matters which in the judge's opinion will assist the jury. K.S.A. 22-3414(3); K.S.A. 60-406. We conclude that the lack of a limiting instruction under the above circumstances is not clearly erroneous.

## The Defendant's Evidence

During the proffer regarding gang evidence, Carey testified that Hutton was a "gang associate" to the Neighborhood Crips but was

to be expunged from the officer's computer list due to lack of activity. Carey also stated that Carnell Washington was a member of the Junior Boys. Carey testified that the Neighborhood Crips and the Junior Boys were not rival gangs at war but rather tolerated each other. After this testimony, the State made a motion in limine to exclude any evidence of the gang affiliation of Hutton and Carnell Washington. The trial court granted the motion. The trial court explained its reasoning.

"We are not just here to bring out gang affiliations. The whole reason this came up is because Mr. Larry Washington, the Defendant's witness, was placed on the stand and made certain testimony. Mr. Puntch [counsel for the State], in cross examination, in an effort to explore his credibility and motive for his testimony, did inquire as to whether or not he was a member of a street gang and whether or not Mr. Roberts was also a member of that gang. This was denied. Mr. Roberts denied membership.

"At this point in time, I believe the State has a right to go into that area in regard to their credibility to show that. Mr. Puntch also desires to show by way of this witness that one attribute of gang members is they will come into court and lie for one another. This goes directly to motive and credibility.

"Now, I expressed in chambers there's a converse of that. If you can show you have rival gang members, and if you can show they will come into court and testify against one another, that the Defendant, I felt, was entitled to go into that area.

"We have had the testimony from Officer Carey which indicates that the Junior Boys and Neighborhood Crips are not rival gang members. That he has had no basis in the past to see that gang membership alone would cause individuals to come into court and lie for one another.

"Because of that, and if the testimony in front of the jury comes out that way, I will see there would be no relevance in regard to Mr. Washington's gang affiliation unless the Defendant can show that the Junior Boys are, in fact, rival to the Neighborhood Crips, and there is a motive and reason to lie.

"Insofar as Mr. Hutton is concerned, the area that I breached in chambers was dealing with how the testimony would come out. Whether or not there could be a seed planted in regard to a motive for the killing. Based upon this being a gang-related killing. I had indicated there was a possibility the Defendant could then show that Mr. Hutton had in the past associated with the same alleged gang that the Defendant is allegedly connected with.

"That will once again depend upon how the evidence unfolds. If it unfolds as it has unfolded here, I don't see where we would be going into that particular area [motive]. I don't see where there would be any need for that.
. . . .

"I don't feel that, based upon what's been developed so far, that Mr. Washington, Carnell Washington's, gang affiliation is relevant at this point in time. Unless

some showing can be made that there would be a basis and reason for lying based upon gang affiliation by Mr. Washington."

The defendant argues that the trial court's decision was unfair because the State was allowed to bring evidence of gang membership with regard to the defendant's witnesses, but the defendant was not allowed to bring the same evidence with regard to the State's witnesses.

"The abuse of discretion standard is applied in reviewing a motion in limine. The admission or exclusion of evidence is in the sound discretion of the trial court. . . .

"[A] motion in limine should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence, and (2) the mere offer of or statements made during the trial concerning the material will tend to prejudice the jury." *State v. Spresser*, 257 Kan. 664, 667, 896 P.2d 1005 (1995).

In the present case, the trial court found that the evidence of Hutton's and Carnell Washington's gang affiliation was irrelevant under rules of evidence. The trial court did not abuse its discretion by excluding this evidence.

## ADMISSION OF THE DEFENDANT'S PHOTOGRAPH

At trial, the State offered the photograph of the defendant used by the police during their investigation of the crime to identify the defendant. The photo was included in a photo line-up that was presented to Carnell Washington. The defendant did not object to the relevance of the photograph, but objects to the photograph itself. The photograph is a mug shot of the defendant taken at a prior arrest. The defendant argues that this presentation of him as a criminal was so prejudicial as to outweigh the probative value of the evidence. The defendant argues that the trial court abused its discretion when it admitted his mug shots. The defendant asserts that the trial court failed to weigh the prejudicial value against the probative value pursuant to the evidentiary rule of K.S.A. 60-445, which states:

"Except as in this article otherwise provided, the judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a

party who has not had reasonable opportunity to anticipate that such evidence would be offered."

The defendant does not allege surprise with regard to the offer of the defendant's photograph.

The procedural facts surrounding the photograph help to put this argument into context. During trial, the defendant objected to the photograph and offered to stipulate that it was the defendant at the car wash on the day of the shooting. In addition, the defendant objected to the use of the phrase "mug shot." Noting that the State refused to accept this stipulation, the court directed the State to tell its witnesses to use the word "photograph" rather than "mug shot." Further, when the defendant renewed his objection, the trial court ruled that if the photos were taped down so that the jury could not read what was on the back, the photos were admissible. The trial court concluded: "The jury is entitled to look at that photographic array and give what weight they feel it deserves insofar as the selections made by Mr. [Carnell] Washington."

"Admission of demonstrative photographs lies within the broad discretion of the trial judge. In determining whether demonstrative photographs should be admitted, a trial judge must determine whether they are relevant and whether a proper foundation has been laid." *State v. Ruebke*, 240 Kan. 493, 516, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987).

The trial court went out of its way to minimize any prejudicial effect that the photos might have, and it is difficult to conclude that the trial court either abused its discretion in admitting the photos of the defendant into evidence or failed to balance the photograph's prejudicial effect against its probative value.

## SUFFICIENCY OF EVIDENCE

"When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *Knighten*, 260 Kan. 47, Syl. ¶ 1.

"The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of a charge are sus-

tained. *State v. Patterson*, 243 Kan. 262, Syl. ¶ 1, 755 P.2d 551 (1988)." *State v. Pratt*, 255 Kan. 767, 768, 876 P.2d 1390 (1994). The crime with which the defendant was charged and convicted is murder in the first degree. K.S.A. 21-3401(a) defines the elements of this crime: "Murder in the first degree is the killing of a human being committed: (a) Intentionally and with premeditation."

The defendant does not challenge the evidence that supports the elements of first-degree murder. Rather, the defendant argues that the jury acted irrationally when it rejected the defendant's assertion of self-defense. This argument misstates the standard of review. We review all the evidence, viewed in a light most favorable to the State. We do not reweigh the evidence or pass on the credibility of the witnesses. We are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

Affirmed.