No. 121,321

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ERNESTO VAZQUEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

Appellate review of the admission of evidence involves a multistep analysis. First, we consider whether the evidence is relevant. This inquiry contains two components, whether the evidence is material and whether it is probative. The next step requires us to analyze whether the district court erred when weighing the probative value of the evidence against the risk it posed for undue prejudice.

2.

A material fact is one that has some real bearing on the decision in the case and presents a question of law over which an appellate court exercises unlimited review.

3.

Evidence is probative if it has any tendency to prove any material fact and its admission will be examined on appeal for an abuse of discretion by the district court judge.

1

4.

A district court judge commits an abuse of discretion by (1) adopting a ruling no reasonable person would make, (2) making a legal error or reaching an erroneous legal conclusion, or (3) reaching a factual finding not supported by substantial competent evidence.

5.

A criminal defendant's booking photo, taken at the time of arrest for the offenses for which he or she is currently on trial is relevant and generally admissible as evidence if it has a reasonable tendency to prove a material fact.

6.

A booking photo from the current case that illustrated defendant's appearance had changed considerably between the time of his arrest and the time of his trial was material, as required for relevancy determination, for identity purposes, because it explained the confusion by the child witnesses who had difficulty or no longer recognized the defendant due to the changes in his physical appearance.

7.

A booking photo for the current crime does not carry the same potential for an unduly prejudicial impact as a mugshot from a prior case where the latter may suggest the defendant has a history of criminality.

8.

The district court should take preventive measures to minimize any potentially prejudicial effect the photograph might have.

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed March 18, 2022. Affirmed.

2

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Tamara S. Hicks*, assistant county attorney, *Susan Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and ISHERWOOD, JJ.

ISHERWOOD, J.:  A jury found Ernesto Vazquez guilty of one count of rape and three counts of aggravated indecent liberties with a child. The court sentenced him to two consecutive life sentences in prison. On appeal, Vazquez presents three arguments: (1) there was insufficient evidence to sustain the convictions; (2) the district court erred when it admitted his booking photo into evidence; and (3) the prosecutor made inappropriate comments during closing arguments. Following a comprehensive review of his case, we decline to find that Vazquez is entitled to relief on the issues raised. His convictions are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, M.S. and G.A. lived with their two young daughters, 11-year-old E.R.S. and 10-year-old E.X.S., in Garden City. G.A.'s friend, 40-year-old Ernesto Vazquez, lived close by them with his wife and children.

E.R.S. and E.X.S. enjoyed playing soccer and often joined other children from the neighborhood for matches in a nearby vacant lot. Vazquez frequently played with the group, but he was the only adult to do so. Unfortunately, he also used those games as an opportunity to fondle E.R.S. and E.X.S. On more than one occasion, Vazquez hugged E.X.S. from behind then touched her waist or breasts and vagina. E.R.S. experienced similar behavior from Vazquez as he likewise approached her from behind and rubbed her waist or breasts. He also tried to kiss E.R.S. once, but she succeeded in dodging his

3

advances. In yet another instance, Vazquez passed a note to E.R.S. in which he professed his love for her. The inappropriate touching did not go unnoticed by the other children.

In November 2017, E.X.S. and E.R.S. attended a birthday party that Vazquez threw for his son, A.V. During the party, E.R.S. went outside to play with her friend, R.S. Vazquez came outside at one point, grabbed E.R.S. and pulled her between two cars where he fondled her breasts under her clothes, then lifted her bra and placed his mouth on her breasts. When R.S. approached them, Vazquez stopped and returned inside to the party.

A few days later, Vazquez approached E.R.S. in her driveway, pushed her up against a vehicle, touched her breasts under her shirt, then pulled her pants down and penetrated her vagina with his penis. E.R.S. struggled and told Vazquez to stop, but he ignored her pleas. Vazquez eventually relented when a car approached, then E.R.S. ran inside her family's home to safety. She did not immediately tell anyone what happened out of fear that Vazquez would retaliate and harm her parents or friends.

Following these incidents, M.S. observed peculiar behavior from E.R.S., like resting her hands on her stomach. She also discovered that E.R.S. searched out information on YouTube about menstrual cycles and pregnancy. M.S. asked E.R.S. why she explored those topics and whether someone abused her, but E.R.S. insisted that nothing happened. Not satisfied or convinced, M.S. persisted in her inquiry and told E.R.S. "[S]wear to God . . . if you are telling me a lie, God is going to get mad at you." E.R.S. eventually broke down and cried. She told M.S. that on the day before Thanksgiving, Vazquez trapped her in the driveway and "put his thing on her—to her . . ." M.S. panicked and woke G.A. up, who then joined her and E.R.S. in the living room. The commotion awakened E.X.S. When she investigated and found E.R.S. crying and telling her parents about the incidents, E.X.S. disclosed that Vazquez touched her

4

too. M.S. contacted her friends both of whom promptly arrived to comfort the family and encouraged them to contact 911.

M.S. eventually asked her friend to call 911 for them and law enforcement officers quickly got an investigation underway. Detective Freddie Strawder obtained a warrant to search Vazquez' home and found a red sweatshirt and black pants, which matched the description of the clothing E.R.S. reported that Vazquez wore when he attacked her in the driveway. E.R.S. underwent a sexual assault exam and told the examining nurse, Melanie Anderson, that "a man put his private part in my private parts." Anderson observed healed trauma in E.R.S.'s genital area consistent with the account E.R.S. provided. Both girls also participated in interview with Kelly Robbins, the Executive Director at Western Kansas Child Advocacy Center and Kansas Childfirst. E.X.S. told Robbins that Vazquez touched her vagina and nipples. E.R.S. told Robbins that Vazquez raped her and that she did not tell anyone at first because she feared Vazquez might hurt her family if she did.

The investigation yielded four charges against Vazquez, a single count of rape and three counts of aggravated indecent liberties with a child. His case eventually proceeded to a jury trial. Between the date of his arrest and the commencement of trial, however, Vazquez lost a considerable amount of weight. Because of this alteration in his physical appearance, some of the child witnesses struggled when asked to identify him at trial. To overcome this complication, when E.R.S. testified, the prosecutor presented her with Vazquez' booking photo from the day of his arrest to help confirm his identity and explain the confusion. Detective Strawder also testified and verified that the photo accurately reflected how Vazquez looked at the time of his arrest, but he was significantly thinner at trial. Over defense counsel's objection, the State requested and received permission to publish the photo to the jury.

During closing arguments, the State addressed E.R.S.'s testimony about the conversation she shared with her mother that prompted her disclosure:

5

"She did tell her daughter something is wrong. I know something is wrong. You're looking up stuff on the internet about missed periods and being pregnant, things of that nature. You need to talk to me. Tell me what is wrong. You need to tell me. You swear to God you are going to tell me the truth, and then she did say, if you don't tell me the truth, I might die in the night. This did cause [E.R.S.] to tell her for fear that her mom might die in the night. She did admit the truth and told her mom that she had been sexually touched by the defendant in this case. That it was on more than one occasion. It was outside in the trailer park, and it was at the office where the birthday party occurred."

During defense counsel's closing argument, she told the jury it could find reasonable doubt existed by focusing on the inconsistencies that plagued each witness' testimony. As examples, she contrasted E.R.S.'s testimony that no one saw Vazquez rape her in the driveway, with that of Detective Strawder and his assertion that the neighborhood was consistently busy with foot and road traffic. Defense counsel also highlighted a discrepancy between E.R.S.'s interview video where she stated Vazquez raped her against a car and her in-court testimony when she said it happened on a red van. As Vazquez' counsel wrapped up her argument she remarked:

"I think you heard a lot of inconsistencies, a lot of stories that may be described as told in order to bolster [E.R.S.'s] and [E.X.S.'s] version of events, told to support their two friends, [E.R.S.] and [E.X.S.] I'm not sure which parts of what were said were accurate or inaccurate. I would point out that there were a lot of inconsistencies."

On rebuttal, the prosecutor acknowledged the inconsistencies occurred but argued that identical testimonies carried their own degree of suspicion. As for E.R.S.'s testimony, the prosecutor told the jury:

"But I want you to remember when I talked to [E.R.S.], I specifically pointed to the red car that was in the photograph because I was under the assumption that was the car. She could have easily said, yeah, it happened right there. But no, she wanted to make sure that the truth came out to you and that she was honest with you. She said, no, ma'am, it was

not that car. It was a different car. So take those things into consideration when you are thinking about whether the statements that these girls gave you were true."

Later, the prosecutor reiterated, "The children are young. They tried to be as honest with you as they could be and tell you what they remembered." She continued, "And remember what you saw. You saw two very emotional young ladies trying to tell you what happened to them so that you could find him guilty."

The jury deliberated over the evidence for a considerable period before returning a verdict finding Vazquez guilty on all four counts. The district court sentenced Vazquez to serve consecutive life sentences without the possibility of parole for 50 years.

Vazquez now brings his case to us to review and analyze whether error occurred during his trial.

ANALYSIS

WAS THE EVIDENCE ADDUCED AT TRIAL SUFFICIENT TO SUSTAIN VAZQUEZ' CONVICTIONS FOR RAPE AND AGGRAVATED INDECENT LIBERTIES WITH A CHILD?

Appellate courts review challenges to the sufficiency of the evidence in the light favoring the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

In Kansas, courts give juries wide latitude to interpret their own conclusions from the evidence. A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences deducible therefrom. *Rosa*, 304 Kan. at 433. If an inference is reasonable, it is well within the province of the jury to rely on the same.

7

*Rosa*, 304 Kan. at 433. On appeal, courts cannot reweigh the evidence or reassess the credibility of witnesses. *State v. Kettler*, 299 Kan. 448, 466, 325 P.3d 1075 (2014).

Vazquez stands convicted of rape and three counts of aggravated indecent liberties with a child. He contends the State failed to present sufficient evidence to support his rape conviction, the aggravated indecent liberties incident perpetrated against E.R.S. at the birthday party, or the aggravated indecent liberties offenses he committed against E.X.S.

We first turn our attention to the rape conviction. The jury found Vazquez raped E.R.S. in violation of K.S.A. 2016 Supp. 21-5503(a)(3). To sustain the conviction, the State carried the burden to prove, beyond a reasonable doubt, that Vazquez engaged in sexual intercourse with a child under the age of 14. "Sexual intercourse" means any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is enough to constitute sexual intercourse. K.S.A. 2020 Supp. 21-5501(a).

Vazquez advances a multi-faceted argument in support of his claim that his rape conviction should not be permitted to stand. First, he focuses on multiple inconsistencies in E.R.S.'s testimony. Next, he argues the rape could not have occurred next to the red van as E.R.S. claimed because, according to a different witness, E.R.S.'s father removed the van the summer before. Vazquez also asserts there is a question regarding the "physics" of the sex act. He also contends that E.R.S. could not truly have believed she was pregnant because she started her period the day after the alleged rape. Finally, he argues that neighbors would have witnessed the rape had it actually occurred in the driveway as E.R.S. alleged, and that Detective Strawder neglected to interview neighbors and obtain exculpatory evidence. Each claim will be addressed in turn.

Again, the foundation for the first point in Vazquez' challenge to his convictions is an allegation that inconsistent statements made throughout the investigation and trial are remarkable enough to require reversal of his convictions. Sexual assaults are traumatic occurrences in a person's life that do not come with a script which enables them to seamlessly process the incident and navigate the criminal justice system. Inconsistencies, therefore, are frequent occurrences, and this is particularly true in those cases involving young children, as in Vazquez' case. See *State v. Voyles*, 284 Kan. 239, 263, 160 P.3d 794 (2007). Our Supreme Court has provided helpful guidance.

In *State v. Prine*, 287 Kan. 713, 738-39, 200 P.3d 1 (2009), the six-year-old victim testified at the preliminary hearing that Prine penetrated her, but during her trial testimony she denied that penetration occurred. The jury also watched a videotape of the young girl's interview with police where she said Prine's abuse included penetration. On review, the court held that while the child's statements contained inconsistencies, they were still sufficient to support Prine's rape conviction because the "essentials" of the victim's account did not vary. 297 Kan. at 739.

In *Reyna*, a similar credibility challenge arose as part of an effort to overturn four convictions for aggravated indecent liberties with a child. *State v. Reyna*, 290 Kan. 666, 234 P.3d 761 (2010), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Reyna sought to prove that the accounts provided by his two victims, ages six and seven, did not remain entirely consistent from the point of their disclosures to the time of trial. The Supreme Court acknowledged that while the victims' statements contained some inconsistencies, they steadily held firm to key details. *Reyna*, 290 Kan. at 674-75. Thus, Reyna failed to show that the victims' variations demanded reversal of his convictions.

The foundation for this portion of Vazquez' claim of error is that inconsistencies in E.R.S.'s statements rendered her account untrustworthy. But in sufficiency of the

9

evidence inquiries, we are not at liberty to conduct an independent assessment of E.R.S.'s credibility. *State v. Daws*. 303 Kan. 785, 789, 368 P.3d 1074 (2016). That task belongs to the finder of fact alone—in this case, the jurors. They had the benefit of hearing E.R.S.'s testimony firsthand, alongside each of the inconsistencies Vazquez highlights and complains of on appeal. Yet they concluded that the evidence established Vazquez' guilt beyond a reasonable doubt. We cannot supplant that conclusion with one of our own. This allegation of error does not warrant relief.

In his remaining contentions of error within this issue, Vazquez claims his conviction cannot stand because the evidence adduced through E.R.S.'s testimony is not compelling or sufficient. He also asserts that Detective Strawder conducted a deficient investigation which failed to afford the jury a true appreciation for and understanding of the environment where the rape occurred. Each of his allegations is flawed in their own way and will be analyzed in turn. But collectively, and perhaps most significantly, in reviewing the sufficiency of the evidence we are prohibited from reweighing the evidence or resolving conflicts in the evidence. *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). Nevertheless, that is precisely what Vazquez asks that we do in presenting these issues for our consideration. We turn to an independent analysis of each allegation.

In his first claim, Vazquez highlights E.R.S.'s testimony that the rape occurred next to a red van, but according to a different witness, Jose Romero, that van was not in the driveway in November 2017 when the act occurred. Vazquez cannot prevail under this theory of error because it assumes Romero's memory and testimony are accurate. It is within the province of the jury to determine which evidence to accept or reject and it did that here when it opted to reject Romero's timeline of events and recollection of the van's location. Even if the jury did decide to accept Romero's statements about the van, it could still simply conclude that E.R.S. was mistaken in her recollection of the type of vehicle in the driveway. A mistake does not disprove E.R.S.'s overall assertion that the rape took place. Whether Vazquez raped E.R.S. against a red van or a red car is an inconsequential

10

detail that does not minimize or negate the essential details of the act that E.R.S. consistently provided. See *Prine*, 287 Kan. at 739.

Vazquez' next allegation arises out of what he characterizes as the "physics" of the unlawful sex act. It is his contention that if both E.R.S. and Vazquez had their pants around their knees as E.R.S. described, it would have restricted the movement of her legs, rendering it physically impossible for Vazquez to penetrate her with his penis. This argument is grounded in speculation as the record lacks any evidence by which to analyze the claim. A matter of this nature fell within the province of the jury. It is well beyond the scope of our review to run our eyes through the evidence anew. This claim of error does not entitle Vazquez to a reversal of his conviction.

Vazquez next asserts we should overturn his conviction because E.R.S.'s purported pregnancy fears were undercut by the fact she experienced her period at some point after the assault occurred. This argument fails to appreciate the fact that E.R.S. was merely eleven years old when the rape occurred and likely lacked a sophisticated understanding of her reproductive system. Even so, those details were also present for the jury to consider, and they did not find it tipped the balance in Vazquez' favor. Vazquez fails to convince us that this evidence precludes a rational juror from finding him guilty beyond a reasonable doubt.

Lastly, Vazquez questions Detective Strawder's investigation. He insists that someone in the neighborhood would have witnessed the rape had it truly occurred in the manner which E.R.S. claimed. He extrapolates from this conclusory contention that the detective must have conducted a mere cursory investigation because he lacked any legitimate interest in apprehending the real perpetrator. The record before us reflects the contrary to be true. Detective Strawder's investigation yielded ample evidence to sustain convictions for all four offenses charged against Vazquez. Despite Vazquez's seeming assertion to the contrary, Strawder had no legal obligation to sleuth out exculpatory

11

evidence. Indeed, the Kansas and United States Supreme Courts have both consistently held that it is *defense counsel's* duty to investigate and present evidence of their client's innocence. See, e.g., *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Vazquez' complaint about Strawder's lack of exculpatory evidence is unpersuasive.

The record before us belies Vazquez' claim that his case was plagued with deficient evidence. The jury heard testimony from E.R.S.'s friends about the inappropriate manner in which Vazquez touched E.R.S. long before the rape. It also heard that E.R.S. provided substantially similar accounts of the assault to her mother and sister, as well as to Kelly Robbins and Melanie Anderson. Anderson bolstered those accounts when it informed the jury that her examination of E.R.S. revealed evidence of genital trauma consistent with the incident E.R.S. reported.

We decline Vazquez' invitation to reassess witness credibility and reweigh the evidence, as we must. The State presented sufficient evidence to enable a reasonable jury to conclude that Vazquez was guilty beyond a reasonable doubt of the rape of E.R.S. That conviction is affirmed.

### a.      *The incident at the birthday party*

Vazquez also argues the State failed to present sufficient evidence to sustain his conviction of aggravated indecent liberties against E.R.S. for the incident at A.V.'s birthday party. He contends that it would be senseless to commit the act in such close proximity to other partygoers. The State counters that Vazquez again simply seeks to have us disregard the limitations of our governing standard of review.

12

The State charged Vazquez with aggravated indecent liberties with a child in violation of K.S.A. 2016 Supp. 21-5506(b)(3)(A). Accordingly, it carried the burden to establish, beyond a reasonable doubt, that Vazquez engaged in lewd fondling or touching of the person of either E.R.S., who is a child under 14 years of age, or Vazquez, done or submitted to with the intent to arouse or to satisfy the sexual desires of either E.R.S. or Vazquez, or both.

Vazquez does not direct us to any evidence that directly contradicts E.R.S.'s testimony. Rather, he simply reiterates his earlier contention that Detective Strawder failed to find exculpatory evidence. As the Kansas Supreme Court has instructed however, E.R.S.'s testimony alone can be enough to sustain the conviction if it is not so improbable as to defy belief. See *State v. Race*, 293 Kan. 69, 79, 259 P.3d 707 (2011); *Prine*, 287 Kan. at 739. Here, the jury could have reasonably believed that Vazquez saw a brief window of time to assault E.R.S. in the parking lot, free from other partygoers' vantage point. Vazquez asserts such a conclusion is impossible because many witnesses did not see him leave the party. That argument is little more than speculation and certainly not conclusive evidence that he lacked the opportunity and ability to assault E.R.S. as she claimed. He further argues that a security camera at the facility would have captured evidence of the assault if it had actually occurred. But he does not favor us with any evidence to establish that this is necessarily true. For example, he offered no proof that the security cameras exist, that they were operational at the time of the incident, or that they were positioned in a way that would have captured the activity in question. In other words, Vazquez asks us to discard the jury's evidence-based conclusion in favor of his preferred narrative. Given that the jury's verdict constitutes a reasonable conclusion drawn from the evidence adduced at trial, we decline to grant Vazquez the relief he seeks. His conviction for aggravated indecent liberties against E.R.S. for the assault perpetrated at the birthday party is affirmed.

13

*b.*     *The conviction for indecent liberties with E.X.S.*

Vazquez next attacks his conviction for the assault of E.X.S. He claims there would be corroborating testimony from witnesses if Vazquez had assaulted her so publicly as she alleged.

For this offense, the State also charged Vazquez with aggravated indecent liberties with a child in violation of K.S.A. 2016 Supp. 21-5506(b)(3)(A). Thus, in order to sustain the conviction, it had the burden to prove that Vazquez engaged in lewd fondling or touching of the person of either E.X.S., who is a child under 14 years of age, or Vazquez, done or submitted to with the intent to arouse or to satisfy the sexual desires of either E.X.S. or Vazquez, or both.

Once again Vazquez encourages us to reweigh the evidence presented at trial. Arguments merely seeking to establish the weakness in a party's evidence are better suited for a jury, not this court. Here, the evidence presented to the jury included testimony from E.X.S.'s friends who testified that Vazquez frequently touched E.X.S. in an inappropriate way that left them feeling uncomfortable, and that he often expressed his love to both E.X.S. and E.R.S. While this is not direct evidence of the precise act, it constitutes permissible circumstantial evidence of Vazquez' intentions. See *Rosa*, 304 Kan. at 433 ("'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences deducible therefrom.'"). Even without this circumstantial evidence, E.X.S.'s testimony about the incident is enough to sustain the conviction. E.X.S. shared substantially similar versions of the assault with her mother, Kelly Robbins, and the jury. Following a review of that evidence, in a light favoring the State, we have no hesitation in concluding it was sufficient to sustain Vazquez' conviction of aggravated indecent liberties against E.X.S.

14

## DID THE DISTRICT COURT ERR WHEN IT ALLOWED VAZQUEZ' BOOKING PHOTO FROM THE PRESENT CASE INTO EVIDENCE?

At trial, the State moved to admit Vazquez' booking photos into evidence to explain why the child witnesses experienced difficulties when identifying him. The district court overruled an objection from Vazquez' counsel and allowed the photos into evidence. Vazquez now argues the court erred given the irrelevant and overly prejudicial nature of the photographs. This issue is properly preserved for our review under K.S.A. 60-404.

In considering Vazquez' arguments, we apply a multistep analysis. First, we consider whether the photograph is relevant, that is, whether it has a reasonable tendency to prove a material fact. *State v. Morris*, 311 Kan. 483, 492, 463 P.3d 417 (2020). This inquiry contains two components, whether the evidence is (1) material and (2) probative. See *State v. Miller*, 308 Kan. 1119, 1167, 427 P.3d 907 (2018). A material fact is one that has some real bearing on the decision in the case. *State v. Brazzle*, 311 Kan. 754, 758-59, 466 P.3d 1195 (2020). Materiality presents a question of law that appellate courts consider de novo without deferring to the district court judge. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Evidence is probative if it has any tendency to prove any material fact. *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 9, 276 P.3d 165 (2012). We examine a probative determination for an abuse of discretion by the judge. *State v. Boggs*, 287 Kan. 298, 307-08, 197 P.3d 441 (2008). A district court judge commits an abuse of discretion by (1) adopting a ruling no reasonable person would make, (2) making a legal error or reaching an erroneous legal conclusion, or (3) reaching a factual finding not supported by substantial competent evidence. *State v. James*, 309 Kan. 1280, 1305-06, 443 P.3d 1063 (2019).

### a.     Relevance

The first question we must analyze is the relevancy of Vazquez's booking photo in establishing his identity as the man who perpetrated the unlawful sex acts against E.R.S. and E.X.S. Typically, photographic evidence, like most other pieces of evidence, is relevant and generally admissible if it has a reasonable tendency to prove a material fact in the case. *State v. Rodriguez*, 295 Kan. 1146, 1157, 289 P.3d 85 (2012).

B.O., E.S., and E.R.S. all testified that Vazquez looked different at trial than they remembered from the time he lived in the neighborhood. However, each of them recognized him as the perpetrator. Two of the child witnesses, however, either did not recognize Vazquez in the courtroom, or were not certain on the identification. The State had E.R.S. identify Vazquez' mugshots as his appearance at the time of the offenses, and offered the photographs into evidence to establish that the children did not waffle on the fact that Vazquez committed the acts; they simply did not recognize the man on trial as Vazquez because he had lost a great deal of weight between the time of his arrest and his trial. The identity of the girls' assailant is properly considered a material fact in Vazquez' case. The booking photos undeniably had a reasonable tendency to prove that fact. Thus, the district court arrived at the proper conclusion regarding the relevancy of the disputed evidence given its probative value.

### b.     Prejudice

That brings us to the second step of our review. At this step, the judge may still exclude relevant evidence if the risk of undue prejudice outweighs the probative value of the evidence. *State v. Seba*, 305 Kan. 185, 213, 380 P.3d 209 (2016). An appellate court reviews the district court's decision for an abuse of discretion. 305 Kan. at 213. Vazquez, as the party alleging an abuse of discretion, bears the burden to prove such abuse occurred. *State v. Mireles*, 297 Kan. 339, 354, 301 P.3d 677 (2013).

Vazquez contends that the photos were overly prejudicial. When a photograph suggests that a defendant has a criminal history or otherwise had prior exposure to the criminal justice system, it can carry the risk of subjecting that individual to undue prejudice and therefore may be inadmissible. See *State v. Schmidt*, No. 120,770, 2020 WL 2781692, at *3 (Kan. App. 2020) (unpublished opinion) (citing *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 [1973]).

In Kansas, the admissibility of such photographs is largely governed by its contents. In *State v. Roberts*, 261 Kan. 320, 328, 931 P.2d 683 (1997), the district court allowed the State to admit Roberts' mugshot from a prior arrest into evidence in his current trial and Roberts challenged that decision on appeal. The Supreme Court upheld the ruling finding that the district court "went out of its way to minimize" the prejudicial effect of the mugshot. 261 Kan. at 329. In so doing, it highlighted the fact the State used the term "photograph" as opposed to "mugshot" and shielded the jury from the information on the back of the photo which included details about Roberts' prior arrest. 261 Kan. at 329. More recently in *Schmidt*, the district court likewise allowed a similarly redacted mugshot into evidence. Following *Roberts'* lead, the *Schmidt* panel held the district court "took sensible, preventive steps to minimize any potentially prejudicial effect the photograph might have had." 2020 WL 2781692, at *3. Thus, it did not abuse its discretion when it allowed the State to admit the photo into evidence. 2020 WL 2781692, at *3.

Kansas courts have also considered the timing of the photo in conducting the prejudice portion of the analysis. In *State v. Green*, No. 90,999, 2004 WL 2578672, at *6 (Kan. App. 2004) (unpublished opinion), the district court admitted the booking photo taken of Green at the time of her arrest for the crime for which she was on trial. On appeal, Green tried to analogize admission of her contemporaneous booking photo with those cases in which courts determined prior mugshots to be inadmissible. But the *Green* panel held her reliance on those cases was misplaced because a booking photo for the

17

current crime does not carry the same potential for an unduly prejudicial impact as a mugshot from a prior case. Rather, the latter may suggest a history of criminality. And since the mugshot in *Green* showed when it was taken, the jury knew it did not arise from a prior arrest, so its admission was not overly prejudicial. In *State v. Joeckel*, No. 105,117, 2012 WL 307661, at *7-9 (Kan. App. 2012) (unpublished opinion), a panel of this court followed the reasoning set forth in *Green* and held the district court did not abuse its discretion when it allowed booking photos taken both prior and concurrent with Joeckel's arrest for the current crime to be admitted into evidence.

Taken together, *Roberts* and its progeny suggest there are two relevant inquiries when reviewing the admission of booking photos: (1) what measures the district court undertook to minimize the prejudicial effect of the image; and (2) whether it was taken as part of the crime for which the defendant is currently on trial or arose from an earlier encounter the defendant had with law enforcement officers.

With that framework in mind, we conclude that the district court did not abuse its discretion when it allowed the State to admit Vazquez' booking photo into evidence. While he is clearly in custody in the photo, the prosecutor clarified for the jury that it was taken on "January 3, 2018," the date of his arrest in this case. Thus, the photo did not suggest Vazquez had a history of criminality. Rather, it simply memorialized his appearance at the time of his arrest and the State later employed it for legitimate identification purposes. Vazquez did not suffer undue prejudice as a result of the admission of his booking photo. He has failed to sustain his burden to prove the district court abused its discretion in allowing the photo into evidence. The decision of the district court is affirmed.

DID THE PROSECUTOR COMMIT REVERSIBLE ERROR IN CLOSING ARGUMENTS?

The final issue before us involves Vazquez' assertion that reversible error occurred when the prosecutor commented on the credibility of the State's witnesses during closing argument. The State contends that the prosecutor did not commit error and that her closing argument was within the wide latitude allowed under Kansas law.

We apply a two-step analysis to claims of prosecutorial error. First, we must determine whether an error occurred. Second, if an error occurred, we must determine whether the error resulted in prejudice. *State v. Patterson*, 311 Kan. 59, 70, 455 P.3d 792, *cert. denied* 141 S. Ct. 292 (2020). In determining error, we are to consider whether the "prosecutor's actions or statements 'fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.'" 311 Kan. at 70. Furthermore, we must keep in mind that prosecutorial error is harmless if the State proves beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. See *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019).

Three separate statements by the prosecutor provide the foundation for Vazquez' claim. He argues that each of the three statements reflect attempts by the prosecutor to impermissibly bolster the victims' credibility. The first is the prosecutor's remark, "[E.R.S.] did admit the truth and tell her mom that she had been sexually touched by the defendant in this case." The remaining two are captured in the italicized portions from segments of the State's closing reflected below:

> "She could have easily said, yeah, it happened right there. *But, no, she wanted to make sure that the truth came out to you and that she was honest with you. She said, no, ma'am, it was not that car. It was a different car.* So take those things into consideration when you are thinking about whether the statements that these girls gave you were true."

19

".... *And remember what you saw*. You saw two very emotional young ladies trying to tell you what happened to them so that you could find him guilty."

To determine whether prosecutorial error occurred, we analyze whether the challenged comments offended Vazquez' right to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Prosecutors enjoy wide latitude in crafting closing arguments, which allows them to argue reasonable inferences that may be drawn from the evidence. *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016). And while prosecutors are prohibited from offering their personal assessment of a witness's credibility, they may discuss legitimate factors the jury can consider when conducting credibility assessments and may argue why certain factors in the case may lead to a compelling inference of truthfulness. 304 Kan. at 835.

In *State v. Scaife*, 286 Kan. 614, 186 P.3d 755 (2008), comments much like those challenged here were alleged to be unfairly prejudicial. First, in commenting on audio from the victim's 911 call, the prosecutor urged the jury, "'Listen to his voice, listen to his pleading, listen to the manner in which he asked for help. That's how you know he's telling the truth.'" 286 Kan. at 623. Later, the prosecutor argued, "'Why believe [the victim]? Folks, you saw him, you've heard him from the very beginning of this case which was seconds after it began. Evaluate his testimony, evaluate his demeanor, evaluate what he told you, and you don't have any other conclusion.'" 286 Kan. at 623. The Supreme Court found these comments were permissible and held that a prosecutor may explain what the jury should look for when assessing witness credibility, especially when the defense has attacked the credibility of the State's witnesses (as counsel for Vazquez did in this case). 286 Kan. at 624-25.

The complained of remarks here were likewise permissible. First, the prosecutor's comment that E.R.S. "did admit the truth" were in the same vein as the prosecutor's statement in *Scaife*, "'That's how you know that he's telling the truth.'" 286 Kan. at 623.

20

And as in *Scaife*, the prosecutor here sought to explain why the jury could find E.R.S. credible within the broader context of all the witnesses' testimonies. The second comment that Vazquez challenges, where the prosecutor argued that the jury should note that E.R.S. clarified the rape occurred next to a van instead of a car, also bears similarities to *Scaife*. The prosecutor simply crafted a narrative and argued the jury could draw a reasonable inference, that E.R.S. told the truth, from her testimony. See *Scaife*, 286 Kan. at 624. Finally, we conclude that the prosecutor's comment, "You saw two very emotional young ladies trying to tell you what happened to them so that you could find him guilty," is a nonissue. Prosecutions involving sex crimes perpetrated against young children are not stoic, sterile proceedings. Rather, they are frequently, and not surprisingly, emotional undertakings for those directly affected by the perpetrator's unlawful conduct. The complained of comment merely recounts for the jury what it already witnessed from the girls in a way that does not impermissibly pander to the jurors' emotions and sensitivities. We decline to find the statements were erroneous.

Affirmed.